**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

JOANNE KIM,

                Plaintiff,

      v.

REGENERON PHARMACEUTICALS, INC.,
and ASHUTOSH KATIYAR

            Defendants.

Civil Action No. 1:24-cv-05234

## <u>MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'<br>MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT</u>

**MORGAN, LEWIS & BOCKIUS LLP**

By: <u>*/s/ A. Klair Fitzpatrick*</u>
A. Klair Fitzpatrick (Admitted *pro hac vice*)
2222 Market Street
Philadelphia, PA  19103-3007
T: (215) 963-5000
F: (215) 963-5001
klair.fitzpatrick@morganlewis.com

Elisa C. Egonu
101 Park Avenue
New York, NY  10178-0060
T: (212) 309-6000
F: (212) 309-6001
elisa.egonu@morganlewis.com

Dated: October 28, 2024

*Counsel for Defendants*

## TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................. 1

II.  STATEMENT OF ALLEGED FACTS IN THE AMENDED COMPLAINT ................. 3

III.  LEGAL STANDARD ........................................................................................... 7

IV.  ARGUMENT ...................................................................................................... 7

    A.  Plaintiff Fails To State A Discrimination Claim Based On Sex, Familial Status, Caregiver Status, Or Disability By Association ........................................ 7

    B.  The Court Should Dismiss Plaintiff's Title VII Sex Discrimination Claim Because She Does Not Allege Facts Suggesting That She Experienced Sex Discrimination ..................................................................................... 13

    C.  Plaintiff Fails To State A Claim For Disability Discrimination ......................... 14

    D.  Plaintiff's Retaliation Claims In Counts IV, VI, VIII, and X Should Be Dismissed Because She Did Not Complain Of Discrimination ......................... 16

    E.  Plaintiff Has Not Pled Facts Suggesting That Regeneron Or Mr. Katiyar Retaliated Against Her For Requesting An Accommodation ............................ 19

    F.  Plaintiff Fails To State A Claim For NYSHRL Or NYCHRL Discrimination Or Retaliation Against Defendant Katiyar ................................. 20

    G.  Plaintiff Fails To State A Claim Under The New York City Earned Safe And Sick Time Act ................................................................................. 22

V.  CONCLUSION .................................................................................................. 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alfano v. Costello*,
294 F.3d 365 (2d Cir. 2002)............................................................................12, 18

*Alvarez v. Bause*,
No. 22-00186, 2023 WL 1765415 (N.D.N.Y. Feb. 3, 2023)...................................24

*Apuzza v. NYU Langone Long Island*,
No. 22-7519, 2024 WL 3520544 (E.D.N.Y. July 23, 2024).....................................15

*Arazi v. Cohen Bros. Realty Corp.*,
No. 20- 8837, 2022 WL 912940 (S.D.N.Y. Mar. 28, 2022)......................................8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).................................................................................................7

*Bakeer v. Nippon Cargo Airlines, Co.*,
09-3374, 2011 WL 3625103 (E.D.N.Y. July 25, 2011)..........................................17

*Banks v. Gen. Motors, LLC*,
81 F.4th 242 (2d Cir. 2023) ...................................................................................16

*Baptiste v. City Univ. of N.Y.*,
680 F. Supp. 3d 415 (S.D.N.Y. 2023).................................................................8, 21

*Crawford v. Bronx Cmty. Coll.*,
No. 22-1062, 2023 WL 11862082 (S.D.N.Y. July 19, 2023)..................................14

*De La Rosa v. Potter*,
427 Fed. Appx. 28 (2d Cir. 2011)..........................................................................14

*Doe v. Bloomberg, L.P.*,
167 N.E.3d 454 (N.Y. 2021)...................................................................................20

*Ejiogu v. Grand Manor Nursing & Rehab. Ctr.*,
No. 15-505, 2017 WL 1184278 (S.D.N.Y. Mar. 29, 2017)....................................18

*In re Enter. Mortg. Acceptance Co., L.L.C. Sec. Litig.*,
295 F. Supp. 2d 307 (S.D.N.Y. 2003), *aff'd sub nom. Enter. Mortg.
Acceptance Co., LLC, Sec. Litig. v. Enter. Mortg. Acceptance Co.*, 391 F.3d
401 (2d Cir. 2004), *as amended* (Jan. 7, 2005).....................................................23

*Farzan v. Wells Fargo Bank, N.A.*,
   2013 WL 6231615 (S.D.N.Y. Dec. 2, 2013), *aff'd sub nom. Farzan v. Genesis*
   10, 619 F. App'x 15 (2d Cir. 2015) ......................................................................................18

*Floriano-Keetch v. N.Y. State Div. of Hum. Rts.*,
   106 N.Y.S.3d 545 (4th Dep't 2019)......................................................................................19

*Franchino v. Terence Cardinal Cook Health Care Ctr., Inc.*,
   692 F. App'x 39 (2d Cir. 2017) ............................................................................................21

*Francis v. Hartford Bd. of Educ.*,
   760 F. App'x 34 (2d Cir. 2019) ............................................................................................14

*Gates v. City of New York*,
   No. 20-3186, 2021 WL 3774189 (S.D.N.Y. Aug. 25, 2021)....................................................15

*Guardino v. Vill. of Scarsdale Police Dep't*,
   815 F. Supp. 2d 643 (S.D.N.Y. 2011) (ADA) ..........................................................................8

*Gurley v. David H. Berg & Assocs.*,
   No. 20-9998, 2022 WL 309442 (S.D.N.Y. Feb. 2, 2022).........................................................16

*Hong Yin v. N. Shore LIJ Health Sys.*,
   20 F. Supp. 3d 359 (E.D.N.Y. 2014) .....................................................................................17

*Imhof v. New York City Hous. Auth.*,
   No. 23-1880, 2024 WL 3376084 (S.D.N.Y. July 11, 2024).........................................8, 11, 12

*Jackson v. Cnty. of Rockland*,
   450 F. App'x 15 (2d Cir. 2011) ............................................................................................15

*Johnson v. Priceline.com, Inc.*,
   711 F.3d 271 (2d Cir. 2013)....................................................................................................7

*Kruger v. Hamilton Manor Nursing Home*,
   10 F. Supp. 3d 385 (W.D.N.Y. 2014).....................................................................................14

*Lambert v. Trump Int'l Hotel & Tower*,
   304 F. Supp. 3d 405 (S.D.N.Y. 2018)......................................................................................8

*Landgraf v. USI Film Prod.*,
   511 U.S. 244, 114 S. Ct. 1483, 128 L. Ed. 2d 229 (1994)......................................................22

*Leroy v. Delta Airlines, Inc.*,
   No. 20-1033, 2021 WL 84278 (E.D.N.Y. Jan. 11, 2021), *aff'd*, No. 21-267,
   2022 WL 12144507 (2d Cir. Oct. 27, 2022)...........................................................................19

*Lombardi v. Choices Women's Med. Ctr., Inc.*,
  No. 15-5542, 2017 WL 9482110 (E.D.N.Y. Jan. 26, 2017) ......................................................12

*Lombardo v. Dr. Seuss Enterprises, L.P.*,
  No. 16-9974, 2017 WL 1378413 (S.D.N.Y. Apr. 7, 2017) ......................................................24

*McKinnies v. City of New York*,
  No. 23-2567, 2024 WL 4333703 (E.D.N.Y. Sept. 27, 2024) ....................................................7

*Natofsky v. City of New York*,
  921 F.3d 337 (2d Cir. 2019) (ADA retaliation) ........................................................................16

*Patane v. Clark*,
  508 F.3d 106 (2d Cir. 2007)......................................................................................................13

*Paupaw-Myrie v. Mount Vernon City Sch. Dist.*,
  653 F. Supp. 3d 80 (S.D.N.Y. 2023).........................................................................................8

*Pentacon BV v. Vanderhaegen*,
  -- F. Supp. 3d --, 2024 WL 1255992 (S.D.N.Y. Mar. 25, 2024), *recons.
  denied*, No. 23 Civ. 2172, 2024 WL 3835334 (S.D.N.Y. Aug. 15, 2024)................................7

*Raffaele v. City of New York*,
  No. 00-3837, 2004 WL 1969869 (E.D.N.Y. Sept. 7, 2004) ....................................................20

*Regina Metro. Co., LLC v. New York State Div. of Hous. & Cmty. Renewal*,
  154 N.E.3d 972 (2020)..............................................................................................................22

*Richards v. New York City Dep't of Educ.*,
  2015 WL 4164746 (S.D.N.Y. July 10, 2015) ..........................................................................12

*Rolle v. Educ. Bus Transp., Inc.*,
  No. 11-3855, 2013 WL 783026 (E.D.N.Y. Feb. 12, 2013) ......................................................17

*Romano v. A360 Media, LLC*,
  No. 20-08988, 2023 WL 348459 (S.D.N.Y. Jan. 20, 2023) ....................................9, 10, 11, 12

*Shankar v. Accenture LLP*,
  No. 21-3045, 2023 WL 2908660 (S.D.N.Y. Feb. 14, 2023), *recons. denied*,
  2023 WL 2557315 (S.D.N.Y Mar. 17, 2023) (ADA)................................................................8

*Shaughnessy v. Scotiabank*,
  No. 22-10870, 2024 WL 1350083 (S.D.N.Y. Mar. 29, 2024)..................................................20

*Soloviev v. Goldstein*,
  104 F. Supp. 3d 232 (E.D.N.Y. 2015) ......................................................................................19

*Sotomayor v. City of New York*,
  862 F. Supp. 2d 226 (E.D.N.Y. 2012), *aff'd*, 713 F.3d 163 (2d Cir. 2013)..............................18

*Stuart v. T-Mobile USA, Inc.*,
  No. 14-4252, 2015 WL 4760184 (S.D.N.Y. Aug. 12, 2015)....................................................18

*Velez v. Sanchez*,
  693 F.3d 308 (2d Cir. 2012)....................................................................................................22

*Veras v. New York City Dep't of Educ.*,
  No. 22-00056, 2024 WL 3446498 (S.D.N.Y. July 17, 2024).............................................8, 13

*Weber v. City of NY*,
  973 F. Supp. 2d 227 (E.D.N.Y. 2013) ....................................................................................16

**Statutes**

42 U.S.C. § 12102 (1)(A).............................................................................................................14

Americans with Disabilites Act; 42 U.S.C.A. § 12112 ("ADA")..................................8, 12, 13, 16

Family and Medical Leave Act; 29 U.S.C.A. § 2615 ("FMLA")...........................................1, 5, 18

New York City Human Rights Law; N.Y.C. Admin. Code § 8-107 ("NYCHRL").......................20

N.Y.C. Admin. Code § 20-914 ...............................................................................................22, 23

N.Y.C. Admin. Code § 20-924(d)..................................................................................................22

New York City Earned Safe and Sick Time Act ("ESSTA") ........................................3, 22, 23, 24

New York State Human Rights Law; N.Y. Exec. Law § 296 ("NYSHRL") ................................20

Title VII of the Civil Rights Act of 1964; 42 USC § 2000e et seq. ("Title VII") .........................13

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) ............................................................................1, 7, 12

Defendants Regeneron Pharmaceuticals, Inc., ("Regeneron" or "the Company") and Ashutosh Katiyar ("Mr. Katiyar") (collectively, "Defendants") submit this Memorandum of Law in Support of their Partial Motion to Dismiss Counts 3-11 of the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Motion").

## I.    **INTRODUCTION**

Plaintiff's employment with Regeneron ended in February 2024 when her position was eliminated for business reasons.  Plaintiff brought suit, asserting a wide range of claims under federal, state, and local law.  Regeneron moved to dismiss Plaintiff's original Complaint because it lacked sufficient factual allegations to back up its myriad claims.  Dkt. 13 ("First Motion").  The Court afforded Plaintiff the opportunity to amend but warned that she would not get another chance.  Dkt. 14.  While doing little to address the fundamental deficiencies that Regeneron had identified, Plaintiff's amendments crystalized what this case is actually about:  Plaintiff's utilization of leave under the Family and Medical Leave Act ("FMLA") asserted in Counts One and Two.  The remainder of the Amended Complaint amounts to an unsuccessful attempt to shoehorn these FMLA claims into nearly every other conceivable type of discrimination and retaliation claim.  Accordingly, Regeneron now renews its motion under Federal Rule of Civil Procedure 12(b)(6) for an order dismissing Counts Three through Eleven of the Amended Complaint (Dkt. 15) for failure to state a claim.

First, Counts Three through Ten should be dismissed because Plaintiff does not plead facts that would show her termination occurred under circumstances giving rise to an inference of discrimination or retaliation.  While the Amended Complaint details the health challenges her daughter faced, it still does not include specific facts suggesting a link between her position elimination and her status as a woman, working mother, parent, or caregiver; her association with a person with a disability; or because she temporarily had a broken hand seven months earlier.  For

example, the Amended Complaint is devoid of allegations that anyone ever made any negative comments about Plaintiff's sex, parental status, child, or alleged disability, nor does it identify any employees purportedly treated better than her.  In fact, the Amended Complaint is devoid of any allegations tying her protected categories to her termination of employment.  When stripped of its conclusory allegations and labels, the Amended Complaint actually indicates that Plaintiff's managers reacted with sympathy to her daughter's health challenges and that Plaintiff was repeatedly told before her termination that the Company viewed the position she held as having only a "tactical function" that had no "long term" future.  Thus, it should have been no surprise when she was told at her termination meeting that her role "had become more challenging" since a 2022 reorganization, and that as a result, the Company had decided to eliminate her position.

Second, Plaintiff's retaliation claims in Counts Four, Six, Eight, and Ten fail for an additional reason.  In its First Motion, Regeneron moved to dismiss Plaintiff's retaliation claims because Plaintiff did not plead that she engaged in any conduct protected by the statutes she cites.  Her Amended Complaint only confirms this.  Plaintiff alleges that she spoke to Human Resources about what she perceived as her manager's harsh tone and behavior, but she still does not allege that she complained that Regeneron was discriminating against her, and her January 2024 email does not request an actionable request for accommodation.

Third, the claims against Plaintiff's manager, Mr. Katiyar, likewise remain deficient. Plaintiff accuses Mr. Katiyar of being mean and abusive in his tone and upset about her time out of the office, but that is not the basis of a claim under any of the theories identified in the Amended Complaint.  Further, Mr. Katiyar is not alleged to have made or influenced the decision to eliminate Plaintiff's position, and accordingly, he cannot be the target of a discrimination or retaliation claim.

-2-

Finally, Plaintiff adds a private cause of action under the New York City Earned Safe and Sick Time Act ("ESSTA") in Count Eleven based on allegations predating her termination on February 9, 2024. Notwithstanding her failure to state a claim on the merits, ESSTA was only amended to add a private cause of action *after* Plaintiff's termination, effective March 20, 2024, barring any such claim.

In short, Plaintiff's Amended Complaint remains deficient. It recites a litany of personal disappointments and may even reflect a sincere belief by Plaintiff that her job elimination was unwise and that she provided genuine value to Regeneron's Customer Insights Team. But Plaintiff's subjective beliefs are not at issue here, nor is her value to her team. The question posed is whether Plaintiff's frustrations, disappointments, and personal issues translate into viable causes of action. They do not. Plaintiff's averments do not support an inference of discrimination or retaliation for protected activity, nor do they provide a basis to challenge the company's business judgment when it determined that Plaintiff's position was superfluous. For these reasons, as discussed further below, the Court should dismiss Counts Three through Eleven for failure to state claims for relief.

## II.    STATEMENT OF ALLEGED FACTS IN THE AMENDED COMPLAINT[1]

Plaintiff's Hire into Customer Insights

Regeneron hired Plaintiff in June 2020 as a Director in the Customer Insights team, which was a sub-team within the Insights & Analytics Team. Amended Complaint ("Am. Compl.") ¶ 14. Plaintiff was expected to provide competitive intelligence data and analysis across the Company's commercial organization, including for multiple therapeutic areas and products. *Id.* at ¶¶ 19-20. In August 2022, Regeneron restructured the Customer Insights team and broader Insights

---

[1] For purposes of this Motion only, Defendants accept the allegations in the Amended Complaint as true.

& Analytics group.    Instead of having one large Customer Insights team that operated independently, the Company distributed Customer Insights personnel among four commercial business units within Insights & Analytics (Ophthalmology, Immunology, Cardiometabolic, and Oncology).  *Id.* at ¶ 29.  Plaintiff was assigned to the Ophthalmology business unit, which at the time worked mostly with the drug "Eylea."  *Id.* at ¶ 30.  She was the only member of the Ophthalmology business unit focused on commercial intelligence, a relatively new concept at the Company.  *Id.* ¶ 30.

Plaintiff reported to Defendant Ashutosh Katiyar, the Senior Director of the Ophthalmology commercial business unit, who reported to Arvind Balasundaram, the Executive Director of Insights & Analytics.  *Id.* at ¶ 31.

Plaintiff alleges that it soon became clear to her that her role in the new structure was of limited value and had few, if any, advancement opportunities.  This was communicated to Plaintiff on multiple occasions by Mr. Katiyar and others.  *Id.* at ¶¶ 55, 59, 72.[2]  Indeed, Plaintiff alleges that Mr. Katiyar consistently told her that the Company did not see her position as one that would lead to a promotion and emphasized to Plaintiff that her job was viewed as having only a "tactical function" that "could be performed by an associate director."  *Id.* at ¶¶ 56, 72.  In line with these statements, Mr. Katiyar gave Plaintiff notice that her role would be eliminated by explicitly telling her that her role was not a "long term" one, and that she needed to "do something different."  *Id.* at 59.

Plaintiff's Daughter

Plaintiff alleges that her daughter, referred to in the Amended Complaint as "Jane,"

---

[2] Plaintiff's Amended Complaint paragraph numbers contain numbered paragraphs that repeat numbers 71-76.  For the avoidance of doubt, this citation is to the first number 72.

suffered from significant health conditions. *Id.* at ¶ 32. Plaintiff alleges that she shared this information with Mr. Katiyar and Mr. Balasundaram. *Id.* at ¶¶ 32, 36. Plaintiff alleges that there were times when she told Mr. Katiyar that she may have to reschedule or be late to a meeting to care for her daughter. Rather than express any animosity, Mr. Katiyar sympathetically "asked [her] about her daughter's health and said on a few occasions that he knew [Plaintiff] was going through significant issues" dealing with her daughter's health. *Id.* at ¶¶ 36-37. As for Mr. Balasundaram, Plaintiff explained that she would often keep him updated as to her daughter's health status, to which he expressed empathy for Plaintiff's situation, shared his own struggles with his family's health, and provided a listening ear. *Id.* at ¶ 34. When Plaintiff shared with Mr. Balasundaram that her daughter's condition was worsening, he recommended that Plaintiff discuss the situation with Human Resources ("HR"). *Id.* at ¶ 39. On this recommendation, Plaintiff spoke with HR employee Dana Jones in March 2023. *Id.* at ¶¶ 40-41. Although Plaintiff alleges she asked Ms. Jones for information about medical leave options, she alleges she did not request a leave of absence to care for her daughter. *Id.* at ¶ 41.

Plaintiff Takes a Leave of Absence Unrelated to Her Daughter

Three months later, in June 2023, Plaintiff commenced a six-week FMLA leave for her own temporary medical issue (a broken hand). *Id.* at ¶ 42. She alleges that Mr. Katiyar "panicked" about how Plaintiff's job responsibilities would be handled in her absence. *Id.* at ¶ 45. Plaintiff also alleges that when she returned to work in July 2023, Mr. Katiyar "openly expressed his frustration" that Plaintiff's leave placed a burden on him. *Id.* Moreover, Plaintiff claims that Mr. Katiyar proceeded to tell her that her work was "unimportant and useless." *Id.* at ¶ 46.

Plaintiff Considers but Does Not Take a Leave of Absence to Care for Her Daughter

Months later, in September 2023, Plaintiff alleges she again spoke with Ms. Jones

regarding her daughter's health.  This time, Plaintiff allegedly told Ms. Jones that she expected to need time off to care for her daughter.  This did not materialize, however, as Plaintiff alleges she was able to hire a full-time healthcare practitioner.  *Id.* at ¶¶ 50, 52.

<u>Plaintiff Takes Two Days Off Due to COVID-19</u>

In December 2023, Plaintiff contracted COVID-19 for the second time, during which she took two days off from work.  Plaintiff alleges that, as a result of her absence, Mr. Katiyar became "further enrage[d]" and allegedly commented that "it was 'so interesting that [she] caught Covid again.'" *Id.* at ¶ 53.

<u>Plaintiff Complains Generally of Mr. Katiyar's Treatment and Requests to Work from Home and to Have a Flexible Work Schedule</u>

On January 25, 2024, Plaintiff allegedly complained to Ms. Jones that Mr. Katiyar was "verbally abusive and threatening" and "unprofessional," made her "feel small," and excluded her from important meetings.  *Id.* at ¶¶ 53-56.  On January 30, 2024, Plaintiff reached out to meet with Ms. Jones again, this time to discuss her daughter's health needs.  *Id.* at ¶¶ 63-64.  Plaintiff informed Ms. Jones that she needed "temporary flexibility in her schedule" to care for her daughter, but that she was "afraid of the backlash" and Mr. Katiyar's response if she missed a meeting.  *Id.* at ¶ 64.  Ms. Jones directed Plaintiff to ask Mr. Katiyar for a flexible work schedule, which she did on February 5, 2024.  *Id.* at ¶¶ 76-71.[3]

Plaintiff purports to excerpt the email she sent to Mr. Katiyar.  *See id.* at ¶ 71.  According to the Amended Complaint, she explained that because of health concerns related to her child, she unilaterally made the decision to only come into the office two days a week and advised there may be times where she would need to work "non-traditional working hours." *Id.*  She concluded,

---

[3] Plaintiff's Amended Complaint paragraph numbers contain numbered paragraphs that repeat numbers 71-76.  For the avoidance of doubt, this citation is to the second number 71.

"[s]hould there be days that require me to be out, I will let you know in advance, and use my personal days." *Id.*

Plaintiff's Role Elimination

On February 9, 2024, in the culmination of the feedback Plaintiff had been receiving for months regarding her role, and in line with being told she was not in a "long term" role, Ms. Jones and Mr. Katiyar met with Plaintiff to inform her "that the Company decided to eliminate [her] role." *Id.* ¶ 77.  While no other roles on Mr. Katiyar's team were eliminated at this time, Plaintiff's role was the only one of its kind on the team.  *Id.* at ¶ 30.

## III.    LEGAL STANDARD

"To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must allege sufficient facts, taken as true, to state a plausible claim for relief." *Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). "[T]he court's task is to 'assess[ ] the legal feasibility of the complaint,'. . ." *Pentacon BV v. Vanderhaegen*, -- F. Supp. 3d --, 2024 WL 1255992, at \*6 (S.D.N.Y. Mar. 25, 2024), *recons. denied*, No. 23 Civ. 2172, 2024 WL 3835334 (S.D.N.Y. Aug. 15, 2024).  This requires a court to look at the facts actually alleged.  "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "[A]n unadorned, the-defendant-unlawfully-harmed-me accusation" cannot survive a motion to dismiss.  *McKinnies v. City of New York*, No. 23-2567, 2024 WL 4333703, at \*3 (E.D.N.Y. Sept. 27, 2024).

## IV.    ARGUMENT

### A.    Plaintiff Fails To State A Discrimination Claim Based On Sex, Familial Status, Caregiver Status, Or Disability By Association.

The Amended Complaint asserts in various ways under various statutes that Regeneron

discriminated against Plaintiff because she is the mother of a disabled child. *See* Am. Compl. ¶¶ 95-102 (Count Three) (alleging discrimination under NYSHRL based on "the sex stereotype of working mothers," caregiver and "familial status . . . based upon their status as a parent," and "association with a person with a disability");[4] ¶¶ 110- 116 (Count Five) (alleging discrimination under NYCHRL based on "the sex stereotype of working mothers," caregiver status, and "association with someone with a disability"); ¶¶ 124-127 (Count Seven) (alleging associational discrimination based on "her association with her disabled child").

In order to state a *prima facie* case of discrimination, each of these claims requires Plaintiff to plead ***facts*** that support an inference of discriminatory intent, *i.e.*, that the adverse actions occurred because of Plaintiff's protected characteristic(s).[5] *Paupaw-Myrie v. Mount Vernon City Sch. Dist.*, 653 F. Supp. 3d 80, 97 (S.D.N.Y. 2023) (explaining that "Plaintiff must allege facts from which the Court can infer an intent to discriminate on the basis of [alleged protected status]"); *Veras v. New York City Dep't of Educ.*, No. 22-00056, 2024 WL 3446498, at *2 (S.D.N.Y. July 17, 2024) (dismissing Title VII, NYSHRL, NYCHRL, and ADA claims, explaining that "a

---

[4] While Plaintiff purports to bring a claim for associational disability discrimination under the NYSHRL, (Am. Compl. ¶ 97), the State law does not permit such a claim. *See Arazi v. Cohen Bros. Realty Corp.*, No. 20- 8837, 2022 WL 912940, at *8 (S.D.N.Y. Mar. 28, 2022) ("In short, because the NYSHRL makes illegal discriminatory conduct based on the 'disability' of the plaintiff, and association with a person with a disability does not render a non-disabled plaintiff 'disabled,' the NYSHRL does not give rise to a claim for associational discrimination on the basis of disability."). And even if the law did contemplate such a claim, it must fail for the same reasons as the claims fail under federal and local law as explained herein.

[5] To state a claim for discrimination, Plaintiff must plausibly allege facts establishing that (1) she belongs to a protected class; (2) she was qualified for the position at issue; (3) she suffered an adverse employment action; and (4) the action occurred under circumstances giving rise to an inference of discrimination. *Lambert v. Trump Int'l Hotel & Tower*, 304 F. Supp. 3d 405, 417-25 (S.D.N.Y. 2018) (NYSHRL, Title VII, ADA); *Shankar v. Accenture LLP*, No. 21-3045, 2023 WL 2908660, at *4 (S.D.N.Y. Feb. 14, 2023), *recons. denied*, 2023 WL 2557315 (S.D.N.Y Mar. 17, 2023) (ADA); *Guardino v. Vill. of Scarsdale Police Dep't*, 815 F. Supp. 2d 643, 647 (S.D.N.Y. 2011) (ADA). The NYCHRL requires Plaintiff to establish that she "was subject to an unfavorable employment change or treated less well than other employees on the basis of a protected characteristic." *Baptiste v. City Univ. of N.Y.*, 680 F. Supp. 3d 415, 422 (S.D.N.Y. 2023); *Imhof v. New York City Hous. Auth.*, No. 23-1880, 2024 WL 3376084, at *8 (S.D.N.Y. July 11, 2024) (explaining that NYCHRL associational disability discrimination claim requires facts suggesting that "the adverse employment action occurred under circumstances raising a reasonable inference that the disability of the relative or associate was a determining factor in the employer's decision").

plaintiff asserting a cause of action for discrimination under any of these statutes must plead facts sufficient to support an inference of discriminatory intent").

Courts assessing whether a plaintiff has satisfied its burden of pleading facts to support an inference of discrimination look for factual allegations such as "the employer's criticism of the plaintiff's performance in . . . degrading terms [regarding the protected group of which she is a member]; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge." *Romano v. A360 Media, LLC*, No. 20-08988, 2023 WL 348459, at *4 (S.D.N.Y. Jan. 20, 2023). Plaintiff offers no such facts here. By way of example, Plaintiff does not plead how she believes she was stereotyped as a working mother, who stereotyped her that way, or why she concludes that led to her discharge. Further, she does not plead any facts indicating that non-parent employees were treated better, that anyone ever displayed animosity or hostility toward her when she talked about her daughter, or that anyone ever displayed animosity or hostility towards women, parents, or caregivers generally. She also does not allege that any of the "harsh" comments made by Mr. Katiyar related to any of her protected categories. Without such facts, Plaintiff's claim for discrimination based on her sex, caregiver status, familial status, and association with a disabled child, must be dismissed.

Notably, the facts alleged in the Amended Complaint demonstrate that Plaintiff's sex, caregiver status, familial status, and association with a disabled child played no role in the decision to separate her employment. First, Plaintiff alleges that she occasionally informed Mr. Katiyar that she had to reschedule a meeting or that she would be late for a phone call due to her daughter's health, but she does not allege that Mr. Katiyar responded by expressing any resentment about her status as a mother of a disabled child. *Id.* at ¶ 36. Instead, he apparently would ask her about her

daughter's health and expressed that he knew she was going through significant issues with her daughter. *See id.* ¶¶ 34-37. Similarly, Plaintiff describes how Mr. Balasundaram expressed empathy, concern, and understanding with her daughter's condition and shared his own family experiences with her. *Id.* Mr. Balasundaram further directed Plaintiff to speak with HR when her daughter's condition worsened. These facts undermine that Defendants had any animosity towards Plaintiff because she was a woman with caregiving responsibilities.

Second, the Amended Complaint is clear that Mr. Katiyar's alleged frustration with Plaintiff related to her time off, and not her status as a mother of a disabled child. Plaintiff repeatedly alleges that Mr. Katiyar engaged in "abusive and threatening" behavior, but only in response to her requests for time out of the office when she broke her hand and contracted COVID-19. Plaintiff admits Mr. Katiyar "began to treat [her] significantly worse than *before her protected leave*" for her broken hand. *See id.* at ¶¶ 36-37, 47, 53. She further alleges that taking two days off for COVID-19 "seemed to further enrage Katiyar." *Id.* at ¶ 53. Most critically, Plaintiff explicitly alleges that she refrained from taking leave to care for her daughter, not because of his treatment of her as a mother, but because she "did not want Katiyar's behavior toward her to escalate, which she was certain *another leave* would cause." *Id.* at ¶ 52 (emphasis added). In other words, the Amended Complaint makes clear that Mr. Katiyar's alleged mistreatment had nothing to do with her status as a mother or caretaker, or association with someone with a disability, but focused exclusively on her requests for time off. Hostility towards leave or time out of the office does not state a discrimination claim. For example, in *Gallardo v. IEH Corporation*, the Eastern District of New York recently dismissed claims of sex, familial status, and marital status discrimination where the plaintiff's supervisors repeatedly made negative comments about plaintiff's need to take time off in order to care for her child but did not comment about plaintiff's

gender, her status as a parent, or her spouse. No. 21-3257, 2022 WL 4646514, at \*6 (E.D.N.Y. 2022). Comments included telling plaintiff that she "would 'not be around much longer' if she did not understand how 'things work[ed]'" and that "this would not be happening if you weren't taking your PTOs." *Id.* Because these comments suggested "at most an issue with [p]laintiff working remotely or taking time off," the court dismissed the discrimination claims for failure to plead an inference of discrimination because they were unrelated to plaintiff's sex, familial, or marital status. *Id.* Just so here.

Third, the Amended Complaint makes clear that Plaintiff's role was slated for elimination irrespective of her sex, familial status, caregiver status, or association with her disabled child. Plaintiff alleges, throughout her Amended Complaint, that she was told following a reorganization in 2022 that she merely performed a "tactical function" that would not be promoted, Am. Compl. ¶¶ 56, 59, that the Company viewed the role as "unimportant" and not one that was "going to work for her long term," *id.* at ¶¶ 46-59, and that could be handled by consultants, *id.* at ¶¶ 45, 82. All of these statements are alleged by Plaintiff to have occurred without any reference or connection to her sex, caregiver status, family status, or her association with her disabled child. Plaintiff's allegations reflect that she was warned about her job lacking value long before she requested a modified schedule to care for her daughter and her eventual role elimination. This series of events further undercuts Plaintiff's theory of discrimination and supports Defendants' legitimate reason for her termination. *See Imhof v. New York City Hous. Auth.,* No. 23-1880, 2024 WL 3376084 (S.D.N.Y. July 11, 2024)(dismissing associational discrimination claims and noting that the complaint's allegations "supported the inference that plaintiff was transferred 'based on operational needs'). Given this, the Amended Complaint does not plausibly suggest that Plaintiff's position elimination was motivated by these protected categories.

Stripped of its conclusory assertions of discrimination and bare labels, Plaintiff asks this Court to assume that simply because her managers were aware that she had a daughter with health issues, Regeneron must have discriminated against her on that basis. It is well-settled that discrimination claims require a plaintiff to plead more than membership in a protected class, the defendant's awareness of such membership, and an adverse action or lesser treatment to survive a motion to dismiss. *See Romano*, 2023 WL 348459, at *4 (holding that a plaintiff's "'subjective belief' that her mistreatment was due to her protected characteristics" was insufficient and dismissing Title VII, ADA, NYSHRL, and NYCHRL discrimination claims "principally on the grounds that the Complaint lacks specific, non-conclusory factual allegations which would give rise to an inference of sex discrimination or disability discrimination"). As the Second Circuit Court of Appeals has recognized, "[e]veryone can be characterized by sex, race, ethnicity, or (real or perceived) disability; and many bosses are harsh, unjust, and rude. It is therefore important [to] exclude from consideration personnel decisions that lack a linkage or correlation to the claimed ground of discrimination. Otherwise, the federal courts will become a court of personnel appeals." *Alfano v. Costello*, 294 F.3d 365, 377 (2d Cir. 2002); *see also Lombardi v. Choices Women's Med. Ctr., Inc.*, No. 15-5542, 2017 WL 9482110, at *10 (E.D.N.Y. Jan. 26, 2017) ("At a bare minimum, Rule 12(b)(6) requires more than the allegation that a member of a protected class is unhappy with the way that [s]he has been treated[.]").

Courts considering similar conclusory allegations do not hesitate to dismiss discrimination claims. *See, e.g., Imhof v. New York City Hous. Auth.,* No. 23-1880, 2024 WL 3376084 (S.D.N.Y. July 11, 2024) (dismissing ADA and NYCHRL associational disability discrimination claims where plaintiff failed to allege "that he was treated less well, even in part, due to discrimination because of his wife or son's health condition."); *Richards v. New York City Dep't of Educ.*, 2015

WL 4164746, at *6 (S.D.N.Y. July 10, 2015) (dismissing gender discrimination claims under NYSHRL, Title VII, and NYCHRL); *Veras*, 2024 WL 3446498, at *4 n.3 (dismissing disability and religion-based discrimination claims where plaintiff's allegations were related to her status as a union representative as opposed to her disability or race).  The Court should do the same here.

> **B.    The Court Should Dismiss Plaintiff's Title VII Sex Discrimination Claim Because She Does Not Allege Facts Suggesting That She Experienced Sex Discrimination.**

In addition to sex discrimination claims based on a working mother stereotype (Counts Three and Five), Plaintiff also brings a standalone sex discrimination claim under Title VII with even more of a dearth of allegations to support it than the previous two.  This Title VII sex discrimination claim also fails because Plaintiff still does not allege a single allegation of mistreatment that relates in any way to her sex.  Regeneron pointed this out in its First Motion, and in response, Plaintiff merely added the Title VII sex discrimination claim (Count Nine) and an allegation that she is a woman.  Am. Compl. ¶¶ 14, 133.  Because the Amended Complaint lacks facts suggesting that Plaintiff was subject to any differential treatment, adverse actions, or even petty slights because she is a woman, her sex discrimination claim fails, as it is well-settled that "[t]he sine qua non of a gender-based discriminatory action claim under Title VII is that 'the discrimination must be because of sex.'"  *Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007) (affirming dismissal of sex discrimination claim where complaint failed to "allege that [the plaintiff] was subject to any specific gender-based adverse employment action" or "set forth any factual circumstances from which a gender-based motivation for such an action might be inferred"); *see Veras*, 2024 WL 3446498, at *4 n.2 ("Plaintiff made no specific factual allegations regarding sex discrimination.  She merely alleges that she is 'a Dominican American woman' and that she was discriminated against '[a]s a result of her religious practice and being a woman.' Such a cursory reference with no substantive factual allegations in support is plainly insufficient to state

a claim for sex discrimination.").

### C.    Plaintiff Fails To State A Claim For Disability Discrimination.

Plaintiff's disability discrimination claims based on her own alleged disability likewise fail as a matter of law because she has not pled a *prima facie* case of disability discrimination. Accordingly, the Court should dismiss the disability discrimination claims in Counts Three, Five, and Seven.

First, Plaintiff has not pled that she had a disability under the ADA or that she was perceived to be disabled.  The ADA defines disability as "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102 (1)(A).  The Amended Complaint alleges that Plaintiff was disabled for just six weeks from June – July 2023, and that only "*during this time*" she "was substantially limited in major life activities."  Am. Compl. ¶ 42 (emphasis added).  It is well settled that "a 'temporary impairment' lasting only a few months is, 'by itself, too short in duration . . . to be substantially limiting.'" *Francis v. Hartford Bd. of Educ.*, 760 F. App'x 34, 36 (2d Cir. 2019) (quoting *Adams v. Citizens Advice Bureau*, 187 F.3d 315, 316-17 (2d Cir. 1999) (finding two-month restrictions for shoulder injury and five-month restrictions for knee injury where plaintiff was expected to and ultimately did "make a full (and relatively fast) recovery from her injuries" were "too brief and too minor to qualify as disabilities under the ADA"); *Crawford v. Bronx Cmty. Coll.*, No. 22-1062, 2023 WL 11862082, at *8 (S.D.N.Y. July 19, 2023), *report and recommendation adopted*, No. 22-1062, 2024 WL 3898361 (S.D.N.Y. Aug. 21, 2024) (dismissing ADA claim premised on a broken ankle where plaintiff "was able to and did return to work with restrictions less than six weeks later, and was expected to be free of restrictions within eight weeks of the fracture" because her alleged disability was temporary); *De La Rosa v. Potter*, 427 Fed. Appx. 28, 29 (2d Cir. 2011) (temporary back injury not substantially limiting); *Kruger v. Hamilton Manor Nursing Home*, 10 F. Supp. 3d 385, 389 (W.D.N.Y. 2014) ("Plaintiff's

broken arm is not an injury considered a 'disability' under the ADA, and Plaintiff has failed to allege that her injury was more than temporary.").[6]  As such, Plaintiff's broken arm is insufficient to constitute a disability under the ADA.

Second, even if she had a qualifying disability, Plaintiff's federal, state, and local disability discrimination claims suffer from the same fatal defect as her other discrimination claims.  Plaintiff does not allege any discriminatory inference between any mistreatment or adverse action and her broken hand, let alone tie it to her position elimination the following year.  Plaintiff alleges she broke her hand in June 2023.  At that time, she claims, Mr. Katiyar "panicked about how Kim's job responsibilities would be handled while she was out."  Am. Compl. ¶¶ 3, 5, 43-45.  Other than this, there is no suggestion or inference that Plaintiff's disability played any role in the decision to terminate her employment nearly nine months later in February 2024.  But considering how job responsibilities will be handled when an employee is on a leave of absence is not discriminatory.  In fact, every manager must evaluate how job responsibilities will be managed when an employee takes a leave of absence.  The fact that Mr. Katiyar allegedly, "panicked" does not transform this behavior into the basis for a discrimination claim.  Accordingly, Plaintiff's disability discrimination claims should be dismissed because she relies only on "bald assertions of discrimination . . . unsupported by any comments, actions, or examples of similarly-situated individuals outside of [her] protected class being treated differently, from which [a court] could infer that the defendants possessed a discriminatory . . . motive[.]" *Jackson v. Cnty. of Rockland*, 450 F. App'x 15, 19 (2d Cir. 2011); *see, e.g., Gates v. City of New York*, No. 20-3186, 2021 WL

---

[6] To the extent Plaintiff's Amended Complaint could be read to allege that her bout of COVID-19 constituted a "disability," such claim must fail for largely the same reasoning. *See, e.g., Apuzza v. NYU Langone Long Island*, No. 22-7519, 2024 WL 3520544, at *3 (E.D.N.Y. July 23, 2024) (holding that temporary COVID-19 infection is not a disability under the ADA).

-15-

3774189, at \*7 (S.D.N.Y. Aug. 25, 2021) ("'Where, as here, plaintiff has not pled any connection between a disability and an adverse employment action, dismissal is appropriate.'").

### D. Plaintiff's Retaliation Claims In Counts IV, VI, VIII, and X Should Be Dismissed Because She Did Not Complain Of Discrimination.

Counts Four, Six, Eight, and Ten in the Amended Complaint assert retaliation claims against both Defendants under the NYSHRL and the NYCHRL, Am. Compl. ¶¶ 103-109, 117-123, and against Regeneron under the ADA and Title VII, Am. Compl. ¶¶ 128-131, 137-141.  To survive a motion to dismiss on an NYSHRL, Title VII, or ADA retaliation claim, Plaintiff must plead facts that plausibly establish (1) participation in activity protected by the statutes she proceeds under; (2) Defendants' knowledge of the protected activity; (3) an adverse employment action; and (4) a causal connection such that plaintiff's participation in the protected activity was a but-for cause of the adverse action.  *See Banks v. Gen. Motors, LLC*, 81 F.4th 242, 275 (2d Cir. 2023) ("Retaliation claims brought under the NYSHRL . . . are subject to the same standards as federal claims under Title VII."); *Natofsky v. City of New York*, 921 F.3d 337, 353 (2d Cir. 2019) (ADA retaliation).   Under the NYCHRL, Plaintiff must "plausibly allege that '(1) [she] participated in a protected activity known to defendants; (2) defendants took an action that disadvantaged [Plaintiff]; and (3) a causal connection exists between the protected activity and the adverse action.'"  *Gurley v. David H. Berg & Assocs.*, No. 20-9998, 2022 WL 309442, at \*6 (S.D.N.Y. Feb. 2, 2022) (quoting *Fletcher v. Dakota, Inc.*, 99 A.D.3d 43, 51-52 (N.Y. App. Div. 2012)); *see Weber v. City of NY*, 973 F. Supp. 2d 227, 273 (E.D.N.Y. 2013) (explaining that a plaintiff proceeding under the NYCHRL "must still establish that there was a causal connection between his protected activity and the employer's subsequent action" and that the action was "motivated at least in part by an impermissible motive").  Plaintiff's retaliation claims fail because she has not alleged that she engaged in ***any protected activity*** by complaining of discrimination,

nor does she allege any causal link suggesting that her role elimination was motivated by her alleged complaints, let alone that but for the complaints, her role would not have been eliminated.

> i.      *Plaintiff did not engage in protected activity.*

Plaintiff does not plead the first element of a claim of retaliation:  she does not allege that she complained of unlawful discrimination, harassment, or retaliation for complaining of discrimination or requesting an accommodation for a disability.  The Amended Complaint alleges that she informed HR that her manager did not include her in meetings and was "verbally abusive and threatening," "upset" her, was "unprofessional," and made her feel "invalidated," "small," and like she was "worth nothing."  Am. Compl. ¶¶ 53, 56, 60.  But it does not allege that Plaintiff complained of any type of discrimination based on gender, disability, or her status as a mother of a disabled child.

It is well-settled that general complaints about discourteous treatment or unfairness do not constitute protected activity.  Instead, Plaintiff must link her complaint to unlawful discrimination or her protected status.  *See, e.g.*, *Hong Yin v. N. Shore LIJ Health Sys.*, 20 F. Supp. 3d 359, 375 (E.D.N.Y. 2014) (dismissing ADA and NYSHRL retaliation claims because complaint "regarding the inappropriate way that she was being treated" did not constitute a complaint of disability discrimination (citing *Mayling Tu v. OppenheimerFunds, Inc.*, 2012 WL 516837, at \*10 (S.D.N.Y. Feb. 16, 2012) (explaining that plaintiff must offer evidence that she "communicated a belief that [defendant] was discriminating against her")); *Rolle v. Educ. Bus Transp., Inc.*, No. 11-3855, 2013 WL 783026, at \*14 (E.D.N.Y. Feb. 12, 2013) (finding no protected activity where plaintiff "state[d] that she complained about her treatment by [supervisors]" but did "not allege that she complained about discrimination or told anyone that they were mistreating her due to her age, gender, or race"); *Bakeer v. Nippon Cargo Airlines, Co.*, 09-3374, 2011 WL 3625103, at \*38 (E.D.N.Y. July 25, 2011) ("To the extent that an employee complains about perceived 'unfair'

treatment relating to job responsibility, hiring practices, or corporate policy, but fails to link the treatment to unlawful discrimination or to his protected status, he fails to establish that he was engaged in protected activity."); *Stuart v. T-Mobile USA, Inc.*, No. 14-4252, 2015 WL 4760184, at *11 (S.D.N.Y. Aug. 12, 2015) ("Plaintiff's claim founders at the first step, as she cannot identify any instance in which she opposed a practice forbidden by the NYCHRL")*; Ejiogu v. Grand Manor Nursing & Rehab. Ctr.*, No. 15-505, 2017 WL 1184278, at *15 n.21 (S.D.N.Y. Mar. 29, 2017) (dismissing retaliation claim where plaintiff "does not identify the 'protected activity' in which she was allegedly engaged"); *see also Farzan v. Wells Fargo Bank, N.A.*, 2013 WL 6231615, at *28-29 (S.D.N.Y. Dec. 2, 2013), *aff'd sub nom. Farzan v. Genesis* 10, 619 F. App'x 15 (2d Cir. 2015) (holding that statement that "he would file a discrimination complaint" was insufficient to establish protected activity).

Regeneron moved to dismiss Plaintiff's initial complaint because Plaintiff's allegations did not indicate she had engaged in any protected activity. The Amended Complaint only confirms this. While Plaintiff purports to quote extensively from her meetings with HR, none of the allegations indicate that she actually linked the alleged mistreatment to any protected characteristics or discrimination. Nor can Plaintiff save these claims by conclusively labeling these complaints as "protest[ing] retaliatory conduct" (Am. Compl. ¶ 6), because such labels and legal conclusions must be disregarded in assessing a motion to dismiss. *See Alfano*, 294 F.3d at 382 (remanding for entry of judgment dismissing complaint where plaintiff's "vague, conclusory accusations of 'retaliatory conduct' [were] insufficient to meet the . . . requirement of a specific linkage between filing an EEOC charge and an act of retaliation").[7]  Plaintiff's inclusion of

---

[7] To the extent Plaintiff asserts that she was complaining of retaliation based on her FMLA leave, that does not constitute protected activity for these statutes. *Sotomayor v. City of New York*, 862 F. Supp. 2d 226, 262 (E.D.N.Y. 2012) ("While [the plaintiff] alleges that she was retaliated against for taking FMLA leave, this is not a 'protected activity' under . . . the NYSHRL, or the NYCHRL."), *aff'd*, 713 F.3d 163 (2d Cir. 2013).

purported quotes from her discussions with HR make clear that if she had actually complained of discrimination, she would have so pled. *See Leroy v. Delta Airlines, Inc.*, No. 20-1033, 2021 WL 84278, at \*2 (E.D.N.Y. Jan. 11, 2021), *aff'd*, No. 21-267, 2022 WL 12144507 (2d Cir. Oct. 27, 2022) ("The NYCHRL . . . does not bar all adverse employer actions, nor all negative experiences in the workplace, and complaints about such actions or experiences falling outside of the NYCHRL's prohibitions do not constitute protected activity."); *Soloviev v. Goldstein*, 104 F. Supp. 3d 232, 251 (E.D.N.Y. 2015) (explaining that, to state a claim for NYSHRL retaliation, "[t]he complaint . . . must be 'directed at conduct prohibited by [the NYSHRL].'" (quoting *Bowen–Hooks v. City of New York*, 13 F. Supp. 3d 179, 222 (E.D.N.Y. 2014)).

Because Plaintiff has not alleged that she complained of discrimination based on her status as a mother of a child with a disability, her own disability, or her gender, her retaliation claims in Counts Four, Six, Eight, and Ten, must fail.

### E. Plaintiff Has Not Pled Facts Suggesting That Regeneron Or Mr. Katiyar Retaliated Against Her For Requesting An Accommodation.

Plaintiff does not adequately allege she requested an accommodation for a disability and faced retaliation for the same. Plaintiff asserts in Counts Four, Six, and Eight that her position was eliminated because she requested an accommodation to care for her daughter. These claims should be dismissed because she has not adequately alleged that she requested an accommodation.

First, Plaintiff's claim fails because she did not request an accommodation as contemplated by the relevant statutes. Plaintiff alleges that she was fired just after she sent an email requesting flexibility in her schedule to care for her daughter. This does not constitute a request for an accommodation because the ADA, NYSHRL, and NYCHRL do not require employers to provide accommodations for employees to care for other disabled individuals. *See Floriano-Keetch v. N.Y. State Div. of Hum. Rts.*, 106 N.Y.S.3d 545, 547 (4th Dep't 2019) (confirming that "caring for an

ailing family member is not a protected activity under the [City or State] Human Rights Law."); *Raffaele v. City of New York*, No. 00-3837, 2004 WL 1969869, at *17 (E.D.N.Y. Sept. 7, 2004) (dismissing claims where plaintiff's request for a transfer in order to take care of his wife and son throughout the workday was denied, and explaining that "[e]ven if this denial was insensitive to the needs of plaintiff's family, it can not be a violation of the ADA because [plaintiff] did not claim the requested accommodation was related to his disability.") (citing 29 C.F.R. 1630.8, App. ("[F]or example, an employee would not be entitled to a modified work schedule as an accommodation to enable the employee to care for a spouse with a disability. See Senate Report at 30; House Labor Report at 61-62; House Judiciary Report at 38-39.")).

Second, Plaintiff's accommodation retaliation claims fail because Plaintiff has not alleged facts suggesting that any request for an accommodation for a disability resulted in her position elimination. As such, Plaintiff's disability accommodation claims should be dismissed.

### F. Plaintiff Fails To State A Claim For NYSHRL Or NYCHRL Discrimination Or Retaliation Against Defendant Katiyar.

Plaintiff also alleges claims against Mr. Katiyar for discrimination based on her sex, disability (including due to association with her daughter), and familial and caregiver status under the NYSHRL and NYCHRL. She also alleges retaliation claims against Mr. Katiyar under the same statutes. Am. Compl. ¶¶ 95-123. These claims fail for the same reasons that they fail against Regeneron discussed above, and for additional reasons.

First, Plaintiff cannot assert a discrimination claim against Mr. Katiyar under the NYSHRL because the statute "limits liability to where an individual defendant is considered an 'employer' of the plaintiff." *Shaughnessy v. Scotiabank*, No. 22-10870, 2024 WL 1350083, at *10 (S.D.N.Y. Mar. 29, 2024) (quoting *Doe v. Bloomberg, L.P.*, 167 N.E.3d 454, 460 (N.Y. 2021)). Under the NYSHRL "[a] corporate employee can never qualify as an 'employer.'" *Id.* (relying on *Doe* to

hold that "[p]laintiff cannot make out a NYSHRL claim for discrimination against [individual defendants].").  Plaintiff's allegations definitively establish that, like Plaintiff, Mr. Katiyar was an employee of Regeneron, rather than her employer.  Am. Compl. ¶¶ 3, 16.  He is therefore not a proper defendant in an NYSHRL claim.  Her aiding and abetting discrimination claim against Mr. Katiyar fails for the same reasons the discrimination claims fail as to Regeneron, discussed above.

Second, Plaintiff's NYCHRL claims for discrimination against Mr. Katiyar fail for the same reasons as her discrimination claims against the Company.  Plaintiff has pled no facts indicating that Mr. Katiyar took any adverse actions because of her sex, alleged disability, including association with her disabled daughter, or her status as a parent or caregiver.  As explained above, Plaintiff alleges that Mr. Katiyar was frustrated with Plaintiff because she took time off for her broken hand more than seven months before her termination and because she took two days off to recover from COVID-19.  These allegations do not implicate her sex, disability status, association with a person with a disability, or her status as a parent or a caregiver, and therefore, her NYCHRL claim against Mr. Katiyar fails.  *See, e.g.*, *Baptiste*, 680 F. Supp. 3d at 422 ("[A]n NYCHRL plaintiff must still allege facts supporting an inference of discrimination" to survive a motion to dismiss.); *Franchino v. Terence Cardinal Cook Health Care Ctr., Inc.*, 692 F. App'x 39, 43 (2d Cir. 2017) (summary order) (affirming dismissal of sex discrimination claims where "any suggestion of discriminatory motivation is undercut by the allegations that [co-worker] acted out of vindictiveness and self-preservation.")); *Gallardo*, 2022 WL 4646514, at *6 (finding employer's stray remarks unrelated to protected classes failed to support inference of discrimination).

Finally, even if Plaintiff had pled facts suggesting that she complained to Ms. Jones about discrimination (she did not), the Amended Complaint is devoid of facts suggesting that Mr. Katiyar

was aware of such complaints or retaliated against her on that basis.  For this additional reason, Plaintiff's retaliation claims against Mr. Katiyar should be dismissed.

**G.      Plaintiff Fails To State A Claim Under The New York City Earned Safe And Sick Time Act.**

Under the ESSTA, covered employees have the right to use safe and sick time for the care and treatment of themselves or a family member in certain circumstances.  N.Y.C. Admin. Code § 20-914.  However, throughout Plaintiff's employment, up to and including her termination, the ESSTA did not provide for a private right of action for employees to bring such claims in court. This is dispositive of Count Eleven of Plaintiff's Amended Complaint.

At the time Plaintiff worked at Regeneron, the ESSTA allowed only the Department of Consumer and Worker Protection to impose penalties under the statute.  N.Y.C. Admin. Code § 20-924(d).  On January 20, 2024, the New York City Council amended the ESSTA to allow for private causes of action; however, the amendment did not become effective until March 20, 2024, after Plaintiff's termination.  The ESSTA does not indicate that it should be applied retroactively. It is well settled that in such instance, this Court should follow the time-honored presumption against retroactive application of legislation, which "embodies a legal doctrine centuries older than our Republic."  *Landgraf v. USI Film Prod.*, 511 U.S. 244, 265, 114 S. Ct. 1483, 1497, 128 L. Ed. 2d 229 (1994*)*; *see Velez v. Sanchez*, 693 F.3d 308, 324 (2d Cir. 2012) ("There is a well-established presumption against the retroactive application of legislation, including amendments creating a private cause of action."); *Regina Metro. Co., LLC v. New York State Div. of Hous. & Cmty. Renewal*, 154 N.E.3d 972, 992 (2020) ("This 'deeply rooted' presumption against retroactivity is based on '[e]lementary considerations of fairness [that] dictate that individuals should have an opportunity to know what the law is and to conform their conduct according'").  Plaintiff's claim ends there because she was terminated on February 9, 2024, before the effective date of the

amendment.  Because any actions that may have given rise to a private right of action against Regeneron necessarily occurred before the effective date of the amendment, she does not have a basis to bring a claim.  *See In re Enter. Mortg. Acceptance Co., L.L.C. Sec. Litig.*, 295 F. Supp. 2d 307, 314 (S.D.N.Y. 2003), *aff'd sub nom. Enter. Mortg. Acceptance Co., LLC, Sec. Litig. v. Enter. Mortg. Acceptance Co.*, 391 F.3d 401 (2d Cir. 2004), *as amended* (Jan. 7, 2005) (statute expanding limitations period for federal securities fraud actions did not state that it applied retroactively or operated to revive time-barred claims, moreover, revival of time-barred claims would force defendants to "defend against claims that they reasonably rely upon as being extinguished.").

Even if the amendment providing for a private right of action under the ESSTA had been effective prior to Plaintiff's position elimination, she still has not alleged facts sufficient to support a claim for retaliation or interference against Regeneron under the ESSTA.  Section 20-918 of the ESSTA prohibits retaliation and interference with the exercise of rights under the law.  Specifically, § 20-918(b) states "[n]o person shall take any adverse action against an employee that penalizes an employee for, or is reasonably likely to deter an employee from, exercising or attempting to exercise rights under this chapter or interfere with an employee's exercise of rights under this chapter and implementing rules."  Per § 20-918(g), a violation is "established when it is shown that a protected activity was a motivating factor for an adverse action[.]"

Here, Plaintiff alleges that Regeneron interfered with her right to take sick time to care for a family member by intimidating, harassing, and threatening Plaintiff and retaliated against her for attempting to exercise her rights by threatening her position, diminishing her role, and terminating her employment.  Am. Compl. ¶¶ 143-44.  However, Plaintiff's Amended Complaint is devoid of any facts asserting that she was intimidated, mistreated, or terminated for taking "sick" time as defined under § 20-912 and referred to in § 20-914 (*i.e.*, using sick time for absence from work

due to her own health condition or to care for a family member who needs medical care). Rather, she claims she was mistreated by Mr. Katiyar after she took six weeks of approved medical leave for her broken hand which she alleges was an FMLA-qualifying event, and which was wholly unrelated to her daughter. This medical leave, seven months before her position was eliminated, cannot be said to have been a motivating factor for her position elimination even if it could qualify as "sick" time under the ESSTA. Nor was her request for a flexible schedule a request for "sick" time under the ESSTA. Indeed, in the email in which she claims she "requested protected leave[,]" she does not state that she planned to take time off, just that *if* there were days she needed to be out, she would use personal days and give advance notice of the same. Am. Compl. ¶ 71. Despite her conclusory allegations stating her ESSTA rights were interfered with and that she faced retaliation for attempting to use the same, her Amended Complaint lacks any facts in support of such a claim. Any ESSTA interference or retaliation claim must fail.

## V.    **CONCLUSION**

For all the reasons set forth above, the Court should dismiss Counts Three through Eleven of Plaintiff's Amended Complaint.[8]

---

[8] Defendants are not simultaneously filing an Answer to the Amended Complaint with this motion as filing a partial motion to dismiss stays such a requirement. *See, e.g., Lombardo v. Dr. Seuss Enterprises, L.P.*, No. 16-9974, 2017 WL 1378413, at *4 (S.D.N.Y. Apr. 7, 2017); *Alvarez v. Bause*, No. 22-00186, 2023 WL 1765415, at *8 (N.D.N.Y. Feb. 3, 2023).

DATED: October 28, 2024

**MORGAN, LEWIS & BOCKIUS LLP**

By: */s/ A. Klair Fitzpatrick*
A. Klair Fitzpatrick (Admitted *pro hac vice*)
2222 Market Street
Philadelphia, PA  19103-3007
T: (215) 963-5000
F: (215) 963-5001
klair.fitzpatrick@morganlewis.com

Elisa C. Egonu
101 Park Avenue
New York, NY  10178-0060
T: (212) 309-6000
F: (212) 309-6001
elisa.egonu@morganlewis.com

*Counsel for Defendants*

-25-