**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| JOANNE KIM,<br><br>                    Plaintiff,<br><br>        v.<br><br>REGENERON PHARMACEUTICALS, INC.,<br>and ASHUTOSH KATIYAR<br><br>                    Defendants. | Civil Action No. 1:24-cv-05234 |

## <u>REPLY MEMORANDUM OF LAW IN FURTHER<br>SUPPORT OF DEFENDANTS' PARTIAL MOTION TO DISMISS</u>

**MORGAN, LEWIS & BOCKIUS LLP**

By: */s/ A. Klair Fitzpatrick*
A. Klair Fitzpatrick (Admitted *pro hac vice*)
2222 Market Street
Philadelphia, PA 19103-3007
T: (215) 963-5000
F: (215) 963-5001
klair.fitzpatrick@morganlewis.com

Elisa C. Egonu
101 Park Avenue
New York, NY 10178-0060
T: (212) 309-6000
F: (212) 309-6001
elisa.egonu@morganlewis.com

Dated: December 9, 2024

*Counsel for Defendants*

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   ARGUMENT ...................................................................................................... 1

      A.    Kim Fails to State a Discrimination Claim Based on Sex, Familial Status, Caregiver Status, or Disability by Association. ....................................................... 1

      B.    Kim Fails to State a Claim for Disability Discrimination...................................... 5

      C.    Kim's Retaliation Claims Should Be Dismissed Because She Did Not Engage in Protected Activity or Create an Inference of Retaliatory Intent. .......... 6

      D.    Kim Fails to State a Claim for NYSHRL or NYCHRL Discrimination or Retaliation Against Defendant Katiyar. .................................................................. 8

      E.    Kim Fails to State a Claim Under ESSTA........................................................... 9

III.  CONCLUSION.................................................................................................. 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arazi v. Cohen Bros. Realty Corp.*,
No. 20-8837, 2022 WL 912940 (S.D.N.Y. Mar. 28, 2022).......................................................5

*Gold v. NY Life Ins. Co.*,
730 F.3d 137 (2d Cir. 2013)...............................................................................................9, 10

*Iwelu v. New York State Office of Mental Health*,
No. 22-3096-cv, 2024 WL 2175938....................................................................................7

*Jones-Cruz v. Rivera*,
No. 19-6910, 2022 WL 20437017 (S.D.N.Y. Oct. 28, 2022)...................................................5

*Kassman v. KPMG LLP*,
925 F. Supp.2d 453 (S.D.N.Y. 2013)....................................................................................2

*Landgraf v. USI Film Prods.*,
511 U.S. 244 (1994)...............................................................................................................9

*Matthew v. JP Morgan Chase Bank, N.A.*,
No. 17-3594, 2024 WL 4606816 (E.D.N.Y. Oct. 28, 2024)..................................................7

*Powell v. Merrick Acad. Charter Sch.*,
No. 16-5315, 2018 WL 1135551 (S.D.N.Y. Feb. 28, 2018)..................................................3

*Tillman v. Grenadier Realty Corp.*,
No. 21-4827, 2024 WL 3758803 (E.D.N.Y. Aug. 12, 2024) .................................................5

*Travelers Indem. Co. v. United States Fire Ins. Co.*,
No. 22-6440, 2024 WL 295355 (S.D.N.Y. Jan. 25, 2024) .....................................................7

*Velez v. Sanchez*,
693 F.3d 308 (2d Cir. 2012)...............................................................................................9, 10

*Whitehead v. Pine Haven Operating LLC*,
222 A.D.3d 104, 201 N.Y.S.3d 697 (2023) ..........................................................................10

**Statutes**

Americans with Disabilites Act ("ADA") ...........................................................................5, 7

Family Medical Leave Act ("FMLA") ...................................................................................7

**Other Authorities**

City Council Hearing Transcript, December 20, 2023, 46-47................................................9

Federal Rule of Civil Procedure 12(b)(6) .............................................................................1

N.Y.C. Admin. Code § 20-924 ...........................................................................................9

N.Y.C. Admin. Code § 20-924(f) .....................................................................................10

Defendants Regeneron Pharmaceuticals, Inc. ("Regeneron" or "the Company") and Ashutosh Katiyar ("Katiyar") (collectively, "Defendants") submit this Memorandum of Law in Further Support of their Partial Motion to Dismiss Counts 3-11 of the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Motion").

## I.    INTRODUCTION

Defendants moved to dismiss Counts Three through Eleven because, even after being afforded the opportunity to amend the Complaint to cure her pleading deficiencies, Plaintiff ("Kim") lacks facts to support her discrimination and related retaliation claims. Plaintiff's Opposition, like her Amended Complaint, make clear that Plaintiff's actual complaints relate only to her utilization of Family and Medical Leave Act ("FMLA") leave and that she has no plausible basis to assert the remaining eight counts. Her recitation of the facts does not include any indication that she was mistreated because she is a woman or a mother, cared for a disabled daughter, or had a broken hand in July 2023. Similarly, Plaintiff does not describe an instance when she opposed alleged discrimination or requested an accommodation due to her own disability, meaning that Plaintiff did not engage in protected activity, and her retaliation claims cannot proceed as a matter of law. Finally, Plaintiff's arguments cannot save her newly added Earned Safe and Sick Time Act ("ESSTA") claim in Count Eleven, which fails both on the merits and because it represents an improper retroactive application of the law.

In sum, Plaintiff's arguments do not change Defendants' initial analysis. Plaintiff's claims asserted in Counts Three through Eleven of the Amended Complaint fail to state a claim for which relief may be granted and warrant dismissal.

## II.    ARGUMENT

### A.    Kim Fails to State a Discrimination Claim Based on Sex, Familial Status, Caregiver Status, or Disability by Association.

Kim seeks to bring sex, familial status, caregiver status, and associational disability discrimination claims based on the bare allegations that (1) she is a woman and the mother of a disabled child and (2) Regeneron terminated her employment when it eliminated her position. But Kim does not plausibly allege that her position elimination occurred under circumstances giving rise to an inference of discrimination. For example, Kim did not allege that Defendants made discriminatory comments, treated employees outside her protected class better, or other facts connecting her position elimination to her protected categories.[1] In opposition, Kim argues that she has alleged facts to support an inference of discrimination based on (1) the timing of events; (2) Katiyar's alleged comment that "it's all about . . . what perceptions you create to people" and statements that her role was unimportant; (3) her subjective belief that her role was important; and (4) her allegations that only her role was eliminated and that she was "replaced." *See* Pl. Br. at 11-14. None of these allegations nudge her claims from conceivable to plausible.

First, Kim cannot show an inference of discrimination by pointing to the timing between her February 5, 2024 email requesting schedule flexibility and her February 9, 2024 termination because, according to her allegations, her managers had long been aware she was a mother of a disabled child. *E.g.*, Am. Compl. ¶¶ 34-37. In fact, she alleges that despite this knowledge, they gave her good performance reviews, *id.* ¶ 26, and reacted with sympathy and concern. *Id.* ¶¶ 34-37. And long before this email, Katiyar told her that her position was not "long term" and had been critical of her at least since her June 2023 leave. *Id.* ¶¶ 46-47, 59. Thus, the temporal proximity between her email and termination is insufficient to establish an inference of discriminatory intent.

---

[1] Knowing this, Plaintiff asserts in her Opposition that she does *not* actually need to plead facts to support an inference of discriminatory intent. That is as wrong as it is revealing about the paucity of her claims. Plaintiff purports to rely on the Second Circuit's standard in *Littlejohn v. City of New York*, but there, the Second Circuit explicitly held that a plaintiff must plead facts to support an inference of discrimination, i.e., that the "employer was motivated by discriminatory intent." 795 F.3d 297, 306 (2d Cir. 2015). Importantly, the elements of a *prima facie* case "provide an outline of what is necessary to render a plaintiff's employment discrimination claims for relief plausible." *See Kassman v. KPMG LLP*, 925 F. Supp. 2d 453, 461 (S.D.N.Y. 2013).

*E.g., Powell v. Merrick Acad. Charter Sch.*, No. 16-5315, 2018 WL 1135551, at *7-8 (S.D.N.Y. Feb. 28, 2018) (explaining that despite plaintiff's allegations of temporal proximity supporting a causal nexus between her disability and her termination, "[p]laintiff has undermined her own cause by alleging facts that refute any inference of discrimination," including that "her position was demonstrably at risk, well before she disclosed her disability.").[2]

Second, Katiyar's comment that "it's all about . . . what perceptions you create to people" does not create an inference of discrimination. Kim seeks to twist this innocuous, facially neutral comment having no connection to her daughter or any requests for flexibility and asserts that it "refer[ed] to [her] requests for protected leave and her responsibilities taking care of Jane" and "is coded language that working mothers are often subjected to in the workplace."  Pl. Br. at 12-13. This subjective speculation cannot support a claim. In *Paupaw-Myrie v. Mount Vernon City Sch. Dist.*, this court dismissed a plaintiff's national origin discrimination claim where she alleged her supervisor made an "inappropriate comment about the texture of [plaintiff's] hair and about growing out [her] relaxer," which plaintiff asserted "is a comment about [her] national origin." 653 F. Supp. 3d 80, 97 (S.D.N.Y. 2023). The court reasoned, "While Plaintiff states these comments had to do with race and were discriminatory in nature, her subjective belief does not support an inference of discrimination." *Id.* at 97-98 (citing *Brodt v. City of New York*, 4 F. Supp. 3d 562, 568 (S.D.N.Y. 2014) ("[A] plaintiff's 'feelings and perceptions of being discriminated against are not evidence of discrimination.'")). The court noted that a direct comment acknowledging "[p]laintiff's membership in a protected class do[es] not support an inference of

---

[2] Regeneron highlighted in opening that the *Gallardo v. IEH Corp.* court (relying on *Littlejohn*) dismissed discrimination claims that indicated "at most an issue with [p]laintiff working remotely or taking time off," as opposed to her gender or her status as a parent. No. 21-3257, 2022 WL 4646514, at *6 (E.D.N.Y. Oct. 1, 2022). Plaintiff does not grapple with this case and instead states in a footnote that *Gallardo* involved only a single stray remark. Pl. Br. at 14 n.4. Even if true, that would be more than Plaintiff offers here. In reality, *Gallardo* considered a host of allegations that plaintiff claimed showed discriminatory animus. *Id.* at *5-6. Even so, the court found that plaintiff failed to allege facts supporting an inference of discriminatory intent. *Id.* at 6. Plaintiff offers even less here.

discrimination," and "[i]f even a direct reference to a protected characteristic is not enough to raise an inference of discrimination, the indirect reference at issue here surely does not." *Id.* at 98. So too here. Kim performs acrobatics to tie Defendants' actions to her status as a caregiver or as the mother of a disabled child, but her subjective perceptions cannot overcome a motion to dismiss.[3]

Third, Kim cannot show an inference of discrimination by asserting that her role had "never been more important." Pl. Br. at 13. Her subjective beliefs of her own performance or importance are irrelevant. *See Bernstein v. New York City Dep't of Educ.*, No. 19-11816, 2021 WL 4429318, at *10 (S.D.N.Y. Sept. 27, 2021), *aff'd*, No. 21-2670, 2022 WL 1739609 (2d Cir. May 31, 2022) ("[A]n employee's disagreement with [her] employer's evaluation of [her] performance is insufficient to establish discriminatory intent."). Her allegations that Katiyar told her that they did not value her role and did not replace her position further undermine her claim.

Fourth, Kim cannot show an inference of discrimination simply because her role was the only in the department eliminated—given that she pleads she held a unique role—and where her role was not filled or replaced, but instead, non-employee consultants allegedly handled certain responsibilities in her absence. Pl. Br. at 13-14; Am. Compl. ¶¶ 30, 82. The cases on which Plaintiff relies do not indicate otherwise. For example, in *Bellaver v. Quanex Corp.*, 200 F.3d 485, 494-95 (7th Cir. 2000), the court noted evidence that "the employer carried out the RIF in a discriminatory way," evidence that is lacking here. Similarly, in contrast to Kim's claims, the employers in *Kerzer* and *Montana* hired new employees to perform plaintiff's responsibilities after termination, ***and*** they were outside plaintiff's protected class. *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 402 (2d Cir. 1998); *Montana v. First Fed. Sav. & Loan Ass'n of Rochester*, 869 F.2d 100, 105 (2d

---

[3] While Kim's Opposition alleges that her career began to "nosedive[]" in the fall of 2023 when she told Katiyar that her daughter suffered from a serious health condition that would require Kim to eventually take medical leave ( Pl. Br. 17-18), the Amended Complaint makes no such allegations.

Cir. 1989). No such facts exist here.[4]

### B.    Kim Fails to State a Claim for Disability Discrimination.

Initially, as to her claims for disability discrimination, Kim concedes that her claims under the ADA fail because her temporary medical impairments do not qualify as disabilities under the statute. *See* Pl. Br. at 15; *see also* Defs. Br. at 14-15. As such, Kim's claim in Count Seven for discrimination based on disability under the ADA should be dismissed.

Next, Kim's disability discrimination claims in Counts Three (NYSHRL) and Five (NYCHRL) fare no better, wherein Kim argues that her bout of COVID-19 constituted a disability. Although the NYCHRL and NYSHRL define disability more broadly than the ADA, Kim must still establish that her alleged infliction resulted in some sort of impairment. Courts only find a person sick with COVID-19 to have a qualifying impairment when they plead facts illustrating that their health was actually impaired—crucial details missing here. *See Arazi v. Cohen Bros. Realty Corp.*, No. 20-8837, 2022 WL 912940, at *9 (S.D.N.Y. Mar. 28, 2022) (explaining that "COVID-19 significantly impaired his respiratory system, leaving him with 'breathing difficulties' requiring the use of 'an oxygen machine,'" and was "not a case about an asymptomatic or mild instance of COVID-19."); *Jones-Cruz v. Rivera*, No. 19-6910, 2022 WL 20437017, at *14 (S.D.N.Y. Oct. 28, 2022) (finding COVID-19 to be "a physical or medical impairment" under the statues where it "resulted in 'breathing problems, inflammation of the lungs, asthma like symptoms,' 'shortness of breath, dizziness, and hypoxia'"). Here, Kim provides no detail regarding her experience with COVID-19. The Amended Complaint does not allege any impairment at all

---

[4] *See Tillman v. Grenadier Realty Corp.*, No. 21-4827, 2024 WL 3758803, at *9 (E.D.N.Y. Aug. 12, 2024) (holding no inference of discrimination based on practically identical facts: terminated "plaintiff was not one of many employees in a department," but instead held "a unique role at [the company] with distinct responsibilities and with no other employees doing equivalent work inside [the company]," and "[a]fter [p]laintiff was terminated, her energy-related tasks were transferred to third-party energy consultants, and neither party alleges that any other employees at [the company] possessed Plaintiff's expertise in energy consulting").

and could even suggest a desire by Kim to avoid spreading the illness to others. Given that Kim knew Defendants' arguments in this regard upon amending, the Court should decline to find that these sparse allegations adequately state a disability under any law. Even so, Kim offers no facts suggesting that Defendants believed her to be disabled or mistreated her as a result.

Finally, as with her other discrimination claims, Kim also fails to establish an inference of discriminatory intent relating to her purported disabilities. At most, the factual allegations only indicate that Defendants took issue with her absence from the workplace generally without regard to the alleged underlying disability. *See* Defs. Br. at 15 (citing Am. Compl. (explaining only that Katiyar "panicked about how [Kim's] job responsibilities would be handled while she was out.")). For all of these reasons, Kim's disability discrimination claims should be dismissed.

### C. Kim's Retaliation Claims Should Be Dismissed Because She Did Not Engage in Protected Activity or Create an Inference of Retaliatory Intent.

As the Motion explained, Kim's retaliation claims in Counts Four, Six, Eight, and Ten in the Amended Complaint fail because she has not alleged that she engaged in ***any protected activity***.

First, Kim's opposition confirms that, as Defendants argued in their Motion, Kim never "protested discrimination" (Am. Compl. ¶¶ 104, 118, 129) and, therefore, cannot state a retaliation claim as a matter of law. Kim begins by erecting a strawman by arguing that "protected activity is not limited to formal protests," Pl. Br. at 18, but Defendants have not taken issue with the *form* of Kim's alleged complaints; rather, it is their *substance* that dooms her claims. Here, Plaintiff argues that she engaged in protected activity on January 25, February 1, and February 8. Pl. Br. at 18-19. But as explained in Defendants' Motion, none of these conversations rise to the level of protected activity. To survive a motion to dismiss, the Amended Complaint's factual allegations must demonstrate that the employer "understood, or could reasonably have understood, that the plaintiff's opposition was directed at conduct prohibited by Title VII" and the other statutes under

-6-

which she has alleged retaliation claims. *Iwelu v. N.Y. State Off. of Mental Health*, No. 22-3096, 2024 WL 2175938, at \*4 (2d Cir. 2024). Kim's description (and supposed quotes) of her alleged protected activity do not plausibly suggest Kim complained of unlawful discrimination based on gender, disability, or her status as a mother of a disabled child. While Kim goes to great pains to label these conversations as protesting "unlawful" behavior or "retaliatory treatment," those are merely bare labels and conclusions that do not transform these conversations into protected activity or suggest that Kim actually complained of *discrimination*. *See* Defs. Br. at 18.[5] Instead, giving Kim every favorable inference, her list only confirms that her complaints, at best, exclusively focused on her FMLA concerns, including a request for "intermittent FMLA" and Katiyar's supposedly "retaliatory treatment" in response to "her last [FMLA] leave." Pl. Br. at 18-19 (citing FAC Section V ¶¶ 52-62; 70-76). The FMLA provides causes of action to pursue these alleged claims. Title VII, NYSHRL, and NYCHRL do not.

Second, Kim states that she engaged in protected activity by requesting a reasonable accommodation when she sought flexibility in her schedule to care for her child. As Regeneron made clear in its Motion, this argument is unavailing because the ADA, the NYSHRL, and NYCHRL do not provide employees with a right to an accommodation to care for a disabled family member. Pl. Br. at 19-20. Kim does not address this argument, and, therefore, the Court should dismiss these claims on that basis alone. To try to save this failing claim, Kim pivots and argues that she requested an accommodation by taking two days off when she had COVID-19, but Kim's use of days off pursuant to a paid time off policy does not constitute a request for accommodation or protected activity. *Matthew v. JP Morgan Chase Bank, N.A.*, No. 17-3594, 2024 WL 4606816,

---

[5] Some of Plaintiff's characterizations of her complaint allegations diverge from her Amended Complaint. The Court should not credit new facts first asserted on opposition. *See Travelers Indem. Co. v. U.S. Fire Ins. Co.*, No. 22-6440, 2024 WL 295355, at \*4 (S.D.N.Y. Jan. 25, 2024) ("[I]t is well settled that '[p]laintiffs cannot amend their complaint by asserting new facts or theories for the first time in opposition to [a] motion to dismiss.'").

at *6 (E.D.N.Y. Oct. 28, 2024) (citing *Nassry v. St. Luke's Roosevelt Hosp.*, No. 13-4719, 2016 WL 1274576, at *12 (S.D.N.Y. Mar. 31, 2016)) (no protected activity when plaintiff informed his employer that he was going to be absent pursuant to the employer's sick leave policy).

Third, even if Kim adequately alleged a complaint of discrimination or an accommodation request, she has not pled facts supporting a causal link between her role elimination and her alleged complaints or requests. Accordingly, Kim's retaliation claim should be dismissed.

### D. Kim Fails to State a Claim for NYSHRL or NYCHRL Discrimination or Retaliation Against Defendant Katiyar.

Defendants argued that Kim cannot sustain claims against Katiyar, in his individual capacity, because such a claim is not contemplated by statute, and more broadly, because Kim has pled no facts indicating that Katiyar took any adverse actions because of her sex, alleged disability, including association with her disabled daughter, or her status as a parent or caregiver. In opposition, Kim again misinterprets Defendants' argument by asserting that individual claims can proceed under the *NYCHRL*.  Pl. Br. at 20. Defendants have not argued otherwise. *See* Defs. Br. at 20-21. Instead, Defendants explained that the *NYSHRL* does not provide for direct individual liability against Katiyar, and under both the Amended Complaint's new NYSHRL aiding and abetting theory and under the NYCHRL for direct liability, Kim's claims against Katiyar still fail for the same reasons her corresponding claims against Regeneron fail: none of Katiyar's alleged actions implicate Kim's disability status, association with a disabled person, or her status as a parent or a caregiver. Instead, she alleges that Katiyar expressed frustration with her taking various separate leaves. Kim's retaliation claims also fail because she does not allege that Katiyar had any knowledge of Kim's purported complaints to HR, or that he made the decision to eliminate her position on that basis (or that he made the decision to eliminate her position at all). Kim's claims against Katiyar on an individual or aiding and abetting basis must therefore fail.

**E.      Kim Fails to State a Claim Under ESSTA.**

Finally, Defendants established that Kim cannot properly assert a claim under ESSTA because the statute did not provide for a private right of action when the events at issue occurred. Defendants further asserted that, even so, Kim still does not state a claim under ESSTA. In response, Kim flips the retroactivity standard on its head by claiming that ESSTA is, in fact, retroactive because if the legislature had intended it not to be, "they would have said so."  Pl. Br. at 21. This is wrong. "There is a well-established presumption against the retroactive application of legislation, including amendments creating a private cause of action." *Velez v. Sanchez*, 693 F.3d 308, 324 (2d Cir. 2012). This "embod[ies] a legal doctrine centuries older than our Republic." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994); *see Gold v. N.Y. Life Ins. Co.*, 730 F.3d 137, 143 (2d Cir. 2013) ("[R]etroactive operation of statutes is not favored by [New York] courts" and it "takes a clear expression of the legislative purpose to justify a retroactive application." (quoting *Majewski v. Broadalbin-Perth Cent. Sch. Dist.*, 91 N.Y.2d 577, 584 (1998))).

"Under New York law, to determine if such a purpose exists [to justify retroactive application], courts look to the text of the legislation at issue," and "[i]f the text is not clear, courts then look to the legislative history." *Gold*, 730 F.3d at 143. Here, neither the statute nor the legislative history reference retroactivity at all or express a clear intent for the statute to apply to conduct occurring before the statute was in effect. *See generally* N.Y.C. Admin. Code § 20-924; NYC City Council Common Civil Service and Labor Hearing Transcript, June 20, 2023; NYC City Council Hearing Transcript, December 20, 2023, 46-47. Absent any indication in the legislative text or legislative history regarding retroactive effect, simply coining a statute as "remedial" as Kim does is insufficient to confer retroactive effect. *Gold*, 730 F.3d at 144. "The New York Court of Appeals has noted that, although amendments to remedial statutes were once presumed to be retroactive, the classification of a statute as 'remedial' no longer automatically

overcomes the strong presumption against retroactivity and that a better guide for discerning the intent of the legislature is text and history." *Id.* ("Faced with no support for retroactivity in the text or legislative history, [plaintiff] contends that, because the statute is remedial, under New York law, any amendments to it are presumed to have retroactive effect. That contention, however, does not reflect the current state of New York law."); *see also Whitehead v. Pine Haven Operating LLC*, 222 A.D.3d 104, 109, 201 N.Y.S.3d 697, 702 (2023) ("[c]lassifying a statute as 'remedial' does not automatically overcome the strong presumption of prospectivity since the term may broadly encompass any attempt to supply some defect or abridge some superfluity in the former law.").

Moreover, "[w]here, as here, legislation 'would impair rights a party possessed when he [or she] acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed,' a presumption ***against*** retroactivity applies." *Whitehead*, 222 A.D.3d 104, 201 N.Y.S.3d 697 at 700. Here, adding a civil remedy fits in the Supreme Court's definition of "impermissibly retroactive legislation" because it increases a party's liability for previously occurring conduct. *Velez*, 693 F.3d at 325. Here, the amendment adding a private right of action also provides for additional liability for employers, including additional injunctive and declaratory relief, attorneys' fees and costs, and any other relief as the court deems appropriate. N.Y.C. Admin. Code § 20-924(f). Thus, the well-established presumption against retroactivity applies, and Kim's ESSTA claim should be dismissed.

Lastly, Kim does not seriously engage with Defendants' arguments that beyond retroactivity, she still has not alleged facts sufficient to state an ESSTA claim. Her claim fails for this additional reason. *See* Defs. Br. at 23-24.

## III.    **CONCLUSION**

For all the reasons set forth in Defendants' Motion, and because the Opposition fails to alter that analysis, the Court should dismiss Counts Three to Eleven in the Amended Complaint.

DATED: December 9, 2024                  **MORGAN, LEWIS & BOCKIUS LLP**

                                         By: */s/ A. Klair Fitzpatrick*
                                         A. Klair Fitzpatrick (Admitted *pro hac vice*)
                                         2222 Market Street
                                         Philadelphia, PA 19103-3007
                                         T: (215) 963-5000
                                         F: (215) 963-5001
                                         klair.fitzpatrick@morganlewis.com

                                         Elisa C. Egonu
                                         101 Park Avenue
                                         New York, NY 10178-0060
                                         T: (212) 309-6000
                                         F: (212) 309-6001
                                         elisa.egonu@morganlewis.com

                                         *Counsel for Defendants*

-11-

-12-

**CERTIFICATE OF SERVICE**

I certify that on December 9, 2024, I caused the foregoing document to be filed via the

Court's ECF system, which caused electronic notification upon all counsel of record.


*/s/ A. Klair Fitzpatrick*