UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOANNE KIM,<br><br>                    Plaintiff,<br><br>-against-<br><br>REGENERON PHARMACEUTICALS, INC.,<br>and ASHUTOSH KATIYAR<br><br>                    Defendants. | No. 1:24-cv-05234 (LAP)<br><br>OPINION AND ORDER |

LORETTA A. PRESKA, Senior United States District Judge:

Before the Court is Regeneron Pharmaceuticals, Inc. ("Regeneron") and Ashutosh Katiyar's ("Katiyar") (collectively, "Defendants") joint motion for partial dismissal[1] of Plaintiff's Amended Complaint (see Am. Compl., dated Oct. 7, 2024 [dkt. no. 15]) filed pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff opposes the motion.[2]  For the reasons set forth below, Defendants' Motion is GRANTED in part and DENIED in part.

I.   **Background**

     **A. Factual Allegations**

     For the purposes of this motion, the Court assumes that the following allegations are true and draws all reasonable inferences

---

[1] (See Memorandum in Support of Motion to Dismiss ("Defendants' Mem."), dated Oct. 28, 2024 [dkt. no. 19]; Reply Memorandum for Partial Dismissal ("Defendants' Reply"), dated Dec. 9, 2024 [dkt. no. 23].)
[2] (See Plaintiff's Opposition to Partial Motion to Dismiss ("Pl. Opp."), dated Nov. 25, 2024 [dkt. no. 22].)

in favor of Plaintiff.  See Koch v. Christie's Int'l PLC, 699 F.3d 141, 145 (2d Cir. 2012).

As alleged in the Amended Complaint, Plaintiff Joanne Kim ("Plaintiff") is a woman and the primary caregiver of her disabled child.  (Am. Compl. ¶ 14.)[3]  Plaintiff worked in New York City as the Director of Customer Insights & Analytics ("CIA") of Regeneron from June 5, 2020 until her February 9, 2024 termination.  (Id.) One of Plaintiff's responsibilities was to create and lead a new department within CIA called Competitive Intelligence ("CI"). (Id. ¶¶ 19-20.)  Plaintiff was successful at her job and regularly received positive performance reviews.  (Id. ¶¶ 24-27.)  Plaintiff initially reported to the head of the CIA department, Arvind Balasundaram ("Balasundaram").  (Id. ¶ 21.)

In August 2022, Regeneron restructured CI such that it no longer operated as a separate group.  Instead, all CI employees were reassigned to one of Regeneron's primary commercial business units.  Plaintiff was reassigned to the Eylea group, one of the company's most popular brands.  (Id. ¶¶ 29-30.)  Defendant Katiyar ("Katiyar")  then  became  head  of  the  Eylea  group,  making  him

---

[3] Due to a drafting error, the paragraph numbers 52-60 and 71-76 appear twice in the Amended Complaint.  For the sake of clarity, the Court identifies the section and paragraph numbers for the affected paragraphs.

Plaintiff's direct manager.  (Id. ¶ 31.)  Plaintiff's previous manager, Balasundaram, became her dotted line manager.[4]  (Id.)

Plaintiff's young daughter suffers from a myriad of health conditions and disabilities that require her to attend special schools and receive extraordinary care.  (Id. ¶¶ 32-33.)  Plaintiff shared these challenges with Balasundaram, who in turn shared the information with Katiyar when Katiyar became Plaintiff's manager.  (Id. ¶¶ 34-35.)  On several occasions, Plaintiff spoke directly to Katiyar about her daughter's challenges.  For example, when Plaintiff had to reschedule or was late to meetings to care for her child, Plaintiff told Katiyar that her daughter's poor health was the reason for her unavailability.  (Id. ¶¶ 36-37.)

In March 2023, Plaintiff explained her child's condition to Dana Jones ("Jones") in Human Resources ("HR").  (Id. ¶ 40.)  Plaintiff asked Jones about the available medical leave options.  Despite being qualified for leave under the Family and Medical Leave Act ("FMLA"), Jones did not inform Plaintiff of her rights.  (Id. ¶ 41.)

A few months later, in June 2023, Plaintiff broke her hand and required six weeks of recovery time.  (Id. ¶ 42.)  An unspecified Regeneron employee informed Plaintiff that she was qualified for medical leave under the FMLA.  Plaintiff decided to

---

[4] Plaintiff's complaint does not define the term "dotted line manager." Accordingly, the Court assumes nothing more than that Balasundaram was one of Plaintiff's superiors.

exercise this right and take six weeks away from work.  (Id. ¶ 43.)
When Plaintiff informed Katiyar that she would be taking leave,
Katiyar complained that Plaintiff was burdening him and made his
frustration clear.   Katiyar hired two consultants to handle
Plaintiff's work during her absence.  (Id. ¶ 45.)

Upon Plaintiff's return, she was met with several instances
of hostile behavior from Katiyar.  On one occasion, Katiyar shouted
at Plaintiff that her work was useless, which frightened Plaintiff.
(Id. ¶ 46.)  On another, Katiyar pounded his fists on the table
and screamed at Plaintiff again.  Katiyar thereafter refused to
include Plaintiff in meetings with stakeholders.  (Id. ¶ 47.)

In September 2023, Plaintiff notified Jones that she would
need time off due to a concerning development in her daughter's
health.  Plaintiff also explained her child's health conditions to
Jones in greater detail.  (Id. ¶ 50.)  Jones again neglected to
inform Plaintiff of her eligibility to take protected leave under
the FMLA.  (Id. ¶ 51.)  Plaintiff did not further inquire about
the possibility of taking leave because she was concerned about
how Katiyar would react given his harsh reaction to her previous
time off.  (Id. § IV ¶ 52.)

In December 2023, Plaintiff contracted COVID for the second
time and used two sick days to recover.  Katiyar allegedly implied
that he believed Plaintiff was lying about contracting COVID again

and seemed to be "further enrage[d]" by her use of sick days.  (Id. § IV ¶ 53.)

On January 24, 2024, Plaintiff asked Katiyar to allow her to return to stakeholder meetings.  (Id. § IV ¶ 54.)  In response, Katiyar became angry and told Plaintiff she would never be promoted because "it's all about . . . what perceptions you create to people."  He then "lectured [Plaintiff] about 'team dynamics,' how she 'collaborate[s] with others,' and how she 'behave[s].'"  (Id. § IV ¶ 55.)  Katiyar also told Plaintiff that her role performed "only a 'tactical function' and was 'just providing some insight back to the business unit [which is] not the role that will get promoted afterwards.'"  (Id. § IV ¶ 56.)  Katiyar then told Plaintiff that her position "was not going to work for her long term" and would "always . . . make [her] unhappy."  (Id. § IV ¶ 59.)

Katiyar's comments deeply upset Plaintiff.  (Id. § IV ¶ 60.) As a result, on January 25, 2024, Plaintiff decided to inform Jones that one of her superiors was treating her in an abusive and threatening manner and that she was afraid her job would be affected if she made a formal HR complaint.  (Id. § V ¶ 53.)  Jones told Plaintiff that if the issue was something that could be investigated and resolved in a way that satisfied Plaintiff, that would likely be the best option.  (Id. § V ¶ 57.)  Jones then told Plaintiff that if she felt her job was no longer the right fit for

her, HR could "probably could put together some type of package for [Plaintiff]." (Id. § V ¶ 58.) Plaintiff then revealed Katiyar's identity and began explaining the specifics of what had occurred, at which point Plaintiff and Jones reached the end of their scheduled call time. (Id. § V ¶¶ 60, 62.) Before the call ended, Plaintiff made it clear that she did not fully explain her situation. (Id. ¶ 62.)

About a week later, on February 1, 2024, Plaintiff met Jones in person to inform Jones that Plaintiff's child's medical team recommended that Plaintiff's child be admitted to a program that required Plaintiff to be available at specific times during the day. (Id. ¶¶ 64-65.) As a result, Plaintiff told Jones she needed temporary schedule flexibility.[5] Jones understood that Plaintiff had made a request for an accommodation, as Jones informed Plaintiff that Regeneron had "an accommodation process" to facilitate schedule flexibility. (Id. ¶ 67.) Plaintiff then told Jones that she did not feel comfortable telling Katiyar about her request given how Katiyar reacted to Plaintiff's previous medical leave. (Id. § V ¶ 71.) Plaintiff reiterated Katiyar's hostile behavior and reminded Jones that Katiyar had been leaving Plaintiff out of meetings. (Id. § V ¶ 72.)

---

[5] Am. Compl. § V ¶ 64 ("[Plaintiff] specifically told Jones that she had a 'special needs child' who had not been in school for the entire year and now required a 'higher level of care.'").

6

Jones, however, allegedly excused Katiyar's behavior and explained that he just "expressed himself in a 'really bad way.'" Jones again neglected to inform Plaintiff that Plaintiff was qualified for FMLA protected leave.  (Id. § V ¶¶ 73, 75.)  Jones then directed Plaintiff to email Katiyar to set forth her request for schedule flexibility.  (Id. § V ¶ 76.)  Plaintiff did so on February 5, 2024.  (Id. § VI ¶ 71.)  The email to Katiyar expressed that Plaintiff's child was experiencing severe health problems. It also notified Katiyar that Plaintiff would need schedule flexibility over the following six to eight weeks to accommodate her child's health needs.[6]  A few days later, on February 8, 2024, Plaintiff told Balasundaram about Katiyar's "increasingly abusive behavior."  (Id. § VI ¶ 74.)  Balasundaram allegedly dismissed Plaintiff's concerns, stating: "don't worry about [Katiyar]; he's harmless."  (Id.)

On February 9, 2024, four days after Plaintiff emailed Katiyar to request a flexible schedule, Jones and Katiyar terminated Plaintiff with immediate effect.  (Id. § VI ¶ 75.)  Katiyar explained that the Company had decided to eliminate Plaintiff's role because it had become "more challenging since the

---

[6] The request portion of Plaintiff's email stated as follows: "My hours may require me to work some non-traditional working hours during this period, where I plan to either stay up late into the evening, or wake up extra early in the mornings, to get my work done. Please know that I take my position very seriously, and will work hard to make meetings and deadlines. However, I ask for some flexibility and understanding, as we are navigating very difficult times. Should there be days that require me to be out, I will let you know in advance, and use my personal days . . . "  (Am. Compl. § VI ¶ 71.)

reorganization." (Id. ¶ 77.) However, Plaintiff's role was "eliminated in name only," as Regeneron hired consultants to perform Plaintiff's responsibilities. (Id. ¶ 82.) The rest of Plaintiff's CI team continued to work at Regeneron. (Id. ¶ 79.) Plaintiff asked to be reassigned to a different position, and Jones claimed the Company would not be able to do so because there was a hiring pause. (Id. ¶ 81.)

## B. Procedural Background

On July 11, 2024, Plaintiff filed this action. (See Complaint, dated July 11, 2024 [dkt. no. 1].) Plaintiff then filed the operative amended complaint on October 7, 2024, asserting eleven claims for relief: Interference in violation of the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq. ("FMLA") against all Defendants (Count One); Retaliation in violation of the FMLA against all Defendants (Count Two); Discrimination in violation of the New York State Human Rights Law, N.Y. Exec. Law § 290 et seq. ("NYSHRL") against all Defendants (Count Three); Retaliation in violation of the NYSHRL against all Defendants (Count Four); Discrimination in violation of the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq. ("NYCHRL") against all Defendants (Count Five); Retaliation in violation of the NYCHRL against all Defendants (Count Six); Disability Discrimination in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA") against Defendant Regeneron (Count Seven);

Retaliation in violation of the ADA against Defendant Regeneron (Count Eight); Discrimination in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et seq. ("Title VII") against Defendant Regeneron (Count Nine); Retaliation in violation of Title VII against Defendant Regeneron (Count Ten); and Retaliation and Interference in violation of the Earned Safe and Sick Time Act, N.Y.C. Admin Code § 20-911 et seq. ("ESSTA") against Defendant Regeneron (Count Eleven).  (See Amended Complaint, dated October 7, 2024 [dkt. no. 15].)

On October 28, 2024, Defendants filed a partial motion to dismiss seeking dismissal of claims Three through Eleven in the Amended Complaint.  (See Defendants' Mem.)  On November 25, 2024, Plaintiff filed an opposition to the motion to dismiss.  (See Pl. Opp.)  On December 9, 2024, Defendants filed a reply to Plaintiff's opposition.  (See Defendants' Reply.)[7]

## II.  Legal Standards

### A. Pleading Standard Under Rule 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the

---

[7] The case was reassigned to this Court on November 5, 2025.

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). That "standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (internal quotation marks and citation omitted).

At the motion to dismiss stage, the Court must "accept as true all factual allegations and draw from them all reasonable inferences" in a plaintiff's favor. Rothstein v. UBS AG, 708 F.3d 82, 94 (2d Cir. 2013) (citations omitted). The Court is not required, however, "to credit conclusory allegations or legal conclusions couched as factual allegations." Id. (citations omitted). Pleadings that offer only "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678 (citation omitted).

For employment discrimination suits at the pleading stage, a plaintiff is not required to prove discrimination or even allege specific facts establishing every element of the McDonnell Douglas prima facie case. See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 (2002); see generally McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). There is no heightened pleading standard for employment discrimination suits. Swierkiewicz, 534 U.S. at 508. Thus, to survive a motion to dismiss, allegations must simply

10

provide "plausible support to the reduced requirements" of the prima facie case.  Littlejohn v. City of New York, 795 F.3d 297, 311 (2d Cir. 2015); see also Swierkiewicz, 534 U.S. at 511.

### B. NYSHRL Pleading Standard

The NYSHRL previously "utilized the same standard as Title VII" but was "amended in 2019 to align with the NYCHRL's more liberal pleading standards."  Qorrolli v. Metro. Dental Assocs., 124 F.4th 115, 122-23 (2d Cir. 2024).  The 2019 amendment to the NYSHRL required that the NYSHRL "be construed liberally" and that "exceptions . . . be construed narrowly in order to maximize deterrence of discriminatory conduct."  N.Y. Exec. Law § 300.  The New York Court of Appeals has therefore held that courts must construe the NYSHRL, like the NYCHRL, "broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible."  Syeed v. Bloomberg L.P., 41 N.Y.3d 446, 451 (2024) (internal quotations and citations omitted); see also Udoh v. New York City Dep't of Prob., 2025 WL 2199613, at *8 (S.D.N.Y.  Aug.  1,  2025)  ("[C]ourts  must  now  scrutinize discrimination claims brought pursuant to the NYSHRL under the same  lenient  pleading  standard . . . under  which  NYCHRL discrimination claims are analyzed.") (quoting Moore v. Hadestown Broadway Limited Liability Co., 722 F. Supp. 3d 229, 245 (S.D.N.Y. 2024)).  Under that lenient pleading standard, Plaintiff must only allege sufficient facts to show she was treated "less well" due to

her "membership in a protected class." Moore, 722 F.Supp. 3d at 246 (internal quotations and citations omitted).

### 1. NYSHRL Discrimination

The NYSHRL makes it an unlawful discriminatory practice "[f]or an employer . . . to discharge from employment . . . or to discriminate against . . . [an employee] in compensation or in terms, conditions or privileges of employment" because of an individual's sex or disability status. N.Y. Exec. Law § 296(1)(a). In addition, the statute renders it unlawful for "any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under [the statute], or to attempt to do so." N.Y. Exec. Law § 296(6). The law also prohibits discrimination against an individual because of their known association with a disabled person, known as "associational discrimination." Barra v. Edward D. Jones & Co., L.P., No. 23-CV-5844 (NSR), 2025 WL 1114183, at *4 (S.D.N.Y. Apr. 15, 2025).

### 2. NYSHRL Retaliation

The NYSHRL provides for direct liability under a theory of retaliation. The statute makes it unlawful for "any person . . . to retaliate or discriminate against any person because he or she has opposed any practices forbidden [by the statute]." N.Y. Exec. Law. § 296(7). To state a prima face case for retaliation under the NYSHRL, Plaintiff must plead that "(1) she engaged in protected activity; (2) the [Defendants were] aware

12

of this activity; (3) the [Defendants] took adverse action against [her]; and (4) a causal connection exists between the protected activity and adverse action." McHenry v. Fox News Network, LLC, 510 F.Supp. 3d 51, 67 (S.D.N.Y. 2020).[8]

### C. NYCHRL Pleading Standard

Courts must analyze NYCHRL claims separately and independently from any federal and state law claims, construing the NYCHRL's provisions "broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible." Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 109 (2d Cir. 2013). Like the NYSHRL, to survive a motion to dismiss under the NYCHRL, a plaintiff must only plead that he or she was treated less well because of his or her membership in a protected class. Moore, 722 F. Supp. at 245.

---

[8] As is the case with NYSHRL discrimination claims, post-amendment NYSHRL retaliation claims are treated with the same broad deference that extends to NYCHRL claims. Qorrolli, 124 F.4th at 122-23 (noting that the post-amendment NYSHRL retaliation standard aligns with the NYCHRL standard). However, the NYSHRL retaliation provision differs from the law's discrimination provision in that it authorizes claims against any individual who engages in retaliation, as opposed to an employer. Nezaj v. PS450 Bar & Rest., 719 F.Supp. 3d 318, 330 (S.D.N.Y. 2024) ("[A]lthough the NYSHRL does not provide for direct liability for discrimination other than by an 'employer,' it makes it unlawful for 'any person' to retaliate.").

### 1. NYCHRL Discrimination

The NYCHRL dictates that "[i]t shall be an unlawful discriminatory practice . . . [f]or an employer . . . because of the actual or perceived . . . gender [or] disability . . . of any person, to refuse to hire or employ or to bar or to discharge from employment such person." N.Y.C. Admin. Code § 8-107(1)(a). The law additionally prohibits "discrimination against a person because of the actual or perceived . . . disability . . . of a person with whom such person has a known relationship or association." Id. § 8-107(20).

### 2. NYCHRL Retaliation

The NYCHRL makes it an unlawful practice "[f]or an employer . . . to discharge . . . or otherwise discriminate against any person because such person has opposed any practices forbidden under [the statute] . . . or requested a reasonable accommodation." N.Y.C. Admin. Code § 8-107(7). To establish a prima facie NYCHRL retaliation claim, Plaintiff must allege that "(1) [she] participated in a protected activity known to [D]efendants; (2) [D]efendants took an action that disadvantaged [her]; and (3) a causal connection exists between the protected activity and the adverse action." Fletcher v. Dakota, Inc., 948 N.Y.S.2d 263, 269 (2012) (cleaned up).

14

## III. **Discussion**

### A. ADA Claims

#### 1. ADA Discrimination (Count Seven)

Through Count Seven, Plaintiff alleges two theories of discrimination under the ADA.  First, Plaintiff alleges that Defendants discriminated against her directly (due to her broken hand and COVID illness).  Second, Plaintiff alleges a form of "associational discrimination" arising from her care for her disabled child.

The Court finds that Plaintiff has not adequately pleaded a case of direct discrimination arising from her own purported disabilities.  However, Plaintiff has adequately pleaded a theory of associational discrimination.

#### a. Direct Discrimination

The ADA prohibits "discriminat[ing] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  The statute further prohibits "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association."  42 U.S.C. § 12112(b)(4).  The ADA defines "disability" as "a physical or mental impairment

15

that substantially limits one or more major life activities . . . ."  42 U.S.C. § 12102(1)(A).

To establish a prima facie ADA discrimination claim, a plaintiff must allege the following: "(1) the defendant is covered by the ADA; (2) plaintiff suffers from or is regarded as suffering from a disability within the meaning of the ADA; (3) plaintiff was qualified to perform the essential functions of the job, with or without reasonable accommodation; and (4) plaintiff suffered an adverse employment action because of [her] disability or perceived disability."  Romano v. A360 Media, LLC, No. 20-CV-08988-LTS, 2023 WL 348459, at *6 (S.D.N.Y. Jan. 20, 2023).

Plaintiff fails adequately to allege a case of direct discrimination on the basis of her broken hand and COVID illness. First, Plaintiff's broken hand impaired her mobility for just six weeks, after which she was able to return to work.  (Am. Compl. ¶ 42.)  Such a minor injury fails to meet the definition of disability under the ADA.  It is well-established that injuries lasting only a few months are insufficient to meet the ADA's substantial limitation requirement.  See De La Rosa v. Potter, 427 F. App'x 28, 29 (2d Cir. 2011) (cleaned up); Francis v. Hartford Bd. of Educ., City of, 760 F. App'x 34 (2d Cir. 2019) (finding that restrictions lasting a few months, for which plaintiff was expected to and did fully recover, insufficient to qualify as ADA disabilities because the injuries were "too brief and too minor.").

16

For similar reasons, a standard temporary COVID-19 infection also does not qualify as an ADA-recognized disability.  See Apuzza v. NYU Langone Long Island, No. 2:22-CV-7519 (NJC) (JMW), 2023 WL 9022790, at *8 (E.D.N.Y. Dec. 29, 2023).

Further, even if Plaintiff did have a qualifying disability, she does not allege the required nexus between her disability and the alleged discrimination.  Plaintiff merely claims that Katiyar generally lashed out at her "for taking [medical] leave" and thereafter refused to include her in meetings.  (Am. Compl ¶ 46-47.)  While those comments may well provide strong support for Plaintiff's FMLA claims (which Defendants do not move to dismiss), a negative reaction towards employees taking medical leave generally does not evidence discriminatory animus against disabled people specifically.  The ultimate question under the ADA is not whether Defendants reacted unfavorably towards Plaintiff because she took medical leave; it is whether Defendants reacted unfavorably because of an ADA-cognizable disability.  Even assuming that Plaintiff had a qualifying disability, Plaintiff does not allege that any disparaging comments were made about her or similarly disabled people.  Nor does she allege that non-disabled employees were treated more favorably when they took temporary medical leave.  See McCrain v. Metro. Transportation Auth., No. 17-CV-2520-RA, 2020 WL 1285634, at *13 (S.D.N.Y. Mar. 18, 2020) (explaining that Plaintiff must "establish that [her]

17

disability was the but-for cause of the adverse employment action.").

Plaintiff's direct ADA discrimination claims therefore fail.

b. Associational Discrimination

Despite the failure of Plaintiff's direct discrimination claims, Plaintiff has adequately pleaded an ADA discrimination claim under a theory of associational discrimination. To plead a prima facie case of associational discrimination, a complaint must allege: "1) that [the plaintiff] was qualified for the job at the time of an adverse employment action; 2) that she was subjected to adverse employment action; 3) that she was known at the time to have a relative or associate with a disability; and 4) that the adverse employment action occurred under circumstances raising a reasonable inference that the disability of the relative or associate was a determining factor in the employer's decision." Graziadio v. Culinary Inst. of Am., 817 F.3d 415, 432 (2d Cir. 2016).

There are at least three recognized theories of associational discrimination: "1) 'expense,' in which an employee suffers adverse action because of [her] association with a disabled individual covered by the employer's insurance, which the employer believes (rightly or wrongly) will be costly; 2) 'disability by association,' in which the employer fears that the employee may contract or is genetically predisposed to develop the disability

18

of the person with whom [s]he is associated; and 3) 'distraction,' in which the employer fears that the employee will be inattentive at work due to the disability of the disabled person."  Id.

In determining whether a plaintiff has adequately pleaded one of these theories of associational discrimination, a district court must not "consider potential nondiscriminatory reasons for termination."  Imhof v. New York City Hous. Auth., No. 23-CV-1880-JPC, 2024 WL 3376084 (S.D.N.Y. July 11, 2024) (cleaned up). Rather, courts must "examine the complaint to determine whether it contains at least minimal support for the proposition that the employer was motivated by discriminatory intent."  Id. (internal quotations and citations omitted).

Plaintiff alleges sufficient facts to support the inference that her termination was motivated by fear that she would be inattentive at work due to the disability of her child.  Plaintiff was terminated just four days after she asked for a flexible schedule that accommodated her daughter's needs, which supports an inference of associational discrimination.  See Kelleher v. Fred A. Cook, Inc., 939 F.3d 465, 469 (2d Cir. 2019) (explaining that adverse employment action resulting from accommodation requests supports an inference of discrimination); Graziadio, 817 F.3d at 431 (relying on close temporal proximity between plaintiff's leave to provide medical care for disabled family members and her termination to conclude that her termination was motivated by leave

19

attempt); Littlejohn, 795 F.3d at 312 (dictating that the sequence of events leading up to a plaintiff's termination can be used to establish unlawful conduct).

Additionally, allegations of pretext can support an inference of discrimination sufficient to survive a motion to dismiss. See Stratton v. Dep't for the Aging for City of New York, 132 F.3d 869, 879 (2d Cir. 1997). Pretext can be alleged from "inconsistencies[] or contradictions" in the employer's explanation for its actions. Zann Kwan v. Andalex Grp. LLC, 737 F.3d 834, 846 (2d Cir. 2013). Plaintiff adequately alleges that the purported nondiscriminatory reasons for her termination were pretextual. Katiyar claimed that Plaintiff was terminated because her role was eliminated, yet the Company hired "consultants" to fulfill Plaintiff's same job responsibilities. (Am. Compl. ¶¶ 77, 82.) The Court of Appeals has recognized that pretext may be inferred when the duties of a terminated employee—supposedly fired due to position elimination—are absorbed by other employees rather than eliminated along with the position. See Montana v. First Fed. Sav. & Loan Ass'n of Rochester, 869 F.2d 100, 105 (2d Cir. 1989). In light of the Complaint's allegations that Plaintiff's work was reassigned to other employees, Plaintiff has plausibly alleged that Defendants' nondiscriminatory justifications for Plaintiff's termination are pretextual. Id.

Moreover, the Company refused to reassign Plaintiff to a new role and claimed the reason for doing so was because of a hiring pause.    (Am. Compl. ¶ 81.).    This motive, too, is belied by Plaintiff's allegation that Regeneron hired consultants to perform Plaintiff's work following her termination.

Accordingly, the motion to dismiss Count Seven against Defendant Regeneron is DENIED.

### 2.  ADA Retaliation (Count Eight)

The ADA makes it unlawful for an employer to "discriminate against any individual because such individual has opposed any act or practice made unlawful by [the ADA]."   42 U.S.C. § 12203(a). To establish a prima facie case of ADA retaliation, a plaintiff must demonstrate that "(1) [s]he engaged in an activity protected by the ADA (2) the employer was aware of this activity; (3) the employer took adverse employment action against [her]; and (4) a causal connection exists between the alleged adverse action and the protected activity."   Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002).   Under the ADA, requests for reasonable accommodations constitute protected activity.   Weixel v. Bd. of Educ. of City of New York, 287 F.3d 138, 149 (2d Cir. 2002); Clark v. Jewish Childcare Ass'n, Inc., 96 F. Supp. 3d 237, 262 (S.D.N.Y. 2015).

Defendants argue that, because the ADA does not require employers to provide accommodations that better enable employees

21

to care for disabled family members, Plaintiff's request cannot constitute protected activity.  However, it is immaterial whether Plaintiff in fact had a right to the requested accommodation.  What matters is that Plaintiff had a right not to be terminated for making the request.  Requests for reasonable accommodations are protected activity "even if the plaintiff's claim that [s]he was entitled to a reasonable accommodation is mistaken, so long as it was made in good faith."  Rodriguez v. Atria Sr. Living Grp., Inc., 887 F. Supp. 2d 503 (S.D.N.Y. 2012) (cleaned up).  Accordingly, non-disabled employees who make such requests in good faith are protected against retaliation.  Conley v. United Parcel Serv., 88 F. Supp. 2d 16, 20 (E.D.N.Y. 2000); Sarno v. Douglas Elliman-Gibbons & Ives, Inc., 183 F.3d 155, 159 (2d Cir. 1999).  Indeed, an employer's reaction to accommodation requests, even if not legally required to honor them, can be used to support inferences that "subsequent adverse employment action was motivated by associational discrimination."  Kelleher, 939 F.3d at 469.

As the Court highlighted in its discussion of Plaintiff's ADA discrimination claim, Plaintiff was terminated just four days after she requested a flexible schedule that would better enable her to care for her disabled child.  (Am. Compl. § VI ¶¶ 71, 75.) The Court of Appeals recognizes that the requisite causal connection for a retaliation claim "can be established indirectly by showing that the protected activity was closely followed in

time by the adverse action." <u>Reed v. A.W. Lawrence & Co.</u>, 95 F.3d 1170, 1178 (2d Cir.1996) (internal quotations and citations omitted).

Accordingly, the motion to dismiss Count Eight against Defendant Regeneron is DENIED.

**B. Title VII Claims**

### 1.  <u>Title VII Discrimination (Count Nine)</u>

Title VII of the Civil Rights Act prohibits employers from "discharge[ing] any individual . . . because of such individual's . . . sex[.]" 42 U.S.C. § 2000e-2(a)(1). The Court of Appeals recognizes that "stereotyping of women as caregivers" or stereotyping motherhood as incompatible with employment can qualify as sex-based discrimination. <u>Back v. Hastings On Hudson Union Free Sch. Dist.</u>, 365 F.3d 107, 122 (2d Cir. 2004).

Title VII claims ultimately require establishment of a prima facie case of discrimination. <u>Graham v. Long Island R.R.</u>, 230 F.3d 34, 38 (2d Cir.2000). However, a prima facie case is not required to survive a motion to dismiss. <u>Barbosa v. Continuum Health Partners, Inc.</u>, 716 F.Supp.2d 210, 215 (S.D.N.Y.2010). The facts alleged in the complaint "need only give plausible support to a minimal inference of discriminatory motivation." <u>Littlejohn</u>, 795 F.3d at 311.

While this is a relatively low bar, the complaint must still allege enough facts from which discriminatory motivation can be

23

inferred.   Perry v. State of New York Dep't of Lab., No. 08-CV-4610-PKC, 2009 WL 2575713, at *2 (S.D.N.Y. Aug. 20, 2009).   Without facts that allege preferential treatment given to similarly situated employees outside the protected class or disparaging comments about the plaintiff's membership in the protected class (or the protected class itself), "dismissal at the pleading stage is warranted."   Id.   See also Brown v. Henderson, 257 F.3d 246, 252 (2d Cir.2001) ("It is axiomatic that mistreatment at work . . . is actionable under Title VII only when it occurs because of an employee's sex, or other protected characteristic.") (emphasis added).

Plaintiff has failed to allege that similarly situated individuals outside of her protected classes (i.e., women without children and/or men) received preferential treatment.   There is no allegation that these individuals received accommodations for caretaking that were denied to Plaintiff.   Further, Plaintiff has not accused any employee at Regeneron of making disparaging comments about women or the ability of mothers to be competent employees.   Instead, Plaintiff highlights the comment Katiyar made after Plaintiff returned from being out sick with COVID for two days (in which Katiyar told Plaintiff she'd never be promoted because "it's all about . . . what perceptions you create to people.")   (Am. Compl. ¶ 55.)   Plaintiff alleges that this comment was "clearly" a reference to Plaintiff's requests for leave and

24

her responsibilities taking care of her child.  Id.  But Plaintiff offers no factual allegations to support that claim other than her own conclusory interpretation.  See Twombly, 550 U.S. at 555.  It is well-established that a plaintiff's subjective belief that a comment is discriminatory in nature does not, standing alone, support an inference of discrimination.  See Paupaw-Myrie v. Mount Vernon City Sch. Dist., 653 F. Supp. 3d 80, 97-98 (S.D.N.Y. 2023); Williams v. Wellness Med. Care, P.C., No. 11-CV-5566-KMK, 2013 WL 5420985, at *6 (S.D.N.Y. Sept. 27, 2013) ("[W]ithout sufficient facts, even the most sincerely held beliefs do not comprise a sufficient basis for withstanding a 12(b)(6) attack.").

Accordingly, the motion to dismiss Count Nine against Defendant Regeneron is GRANTED.

### 2.  Title VII Retaliation (Count Ten)

Title VII of the Civil Rights Act makes it unlawful to discriminate against any induvial because she "opposed any unlawful employment practice" made unlawful by Title VII.  42 U.S.C. § 2000e-3(a).  Plaintiff alleges that she was terminated in retaliation for reporting Katiyar's behavior.  It is true that Plaintiff informed Jones that she felt Katiyar was "verbally abusive and threatening" and "unprofessional" and that Katiyar excluded Plaintiff from important meetings. (Am. Compl. § V ¶¶ 53, 56, 60.)  However, Plaintiff did not express to Jones that Plaintiff felt the treatment was related to Plaintiff's status as

a woman or a mother.  Accordingly, these reports fail to qualify as protected activity because Plaintiff did not make it clear that she was complaining of Title VII-prohibited discriminatory conduct.  See Int'l Healthcare Exch., Inc. v. Glob. Healthcare Exch., LLC, 470 F. Supp. 2d 345, 357 (S.D.N.Y. 2007) ("[A]mbiguous complaints that do not make the employer aware of alleged discriminatory misconduct do not constitute protected activity."). See also Ramos v. City of New York, No. 96-CV-3787 (DLC), 1997 WL 410493, at *3 (S.D.N.Y. July 22, 1997) ("Unfair treatment . . . is not actionable under the civil rights laws and a complaint about it does not constitute protected activity.  To be actionable, the unfair treatment must be due to one's membership in a protected class and the complaint must make that point sufficiently clear.").

Accordingly, the motion to dismiss Count Ten against Defendant Regeneron is GRANTED.

### C. NYSHRL Claims

#### 1.   NYSHRL Discrimination (Count Three)

##### a. Claims Against Katiyar

As a threshold matter, Katiyar argues that the NYSHRL discrimination claim must be dismissed with respect to him because he does not qualify as an "employer" under the NYSHRL and, therefore, is not subject to direct liability.  (Defendants' Mem. at 20-21.)

Katiyar is correct that "where a corporate entity is the plaintiff's employer, an individual affiliated with the entity cannot himself qualify as the employer." Nezaj v. PS450 Bar & Rest., 719 F.Supp. 3d 318, 329 (S.D.N.Y. 2024). Indeed, the New York Court of Appeals has specifically held that where, as here, a plaintiff is employed by a corporate entity, the employer is the corporate entity itself for the purposes of a NYSHRL claim. Doe v. Bloomberg L.P., 36 NY.3d 450, 459 (2021). Accordingly, "shareholders, agents, limited partners, and employees"—such as Individual Defendants—"are not employers." Id.

However, it is possible for individual defendants to be liable for NYSHRL discrimination on an aider-and-abettor theory. Baptiste v. City Univ. of N.Y., 680 F.Supp. 3d 415, 427 (S.D.N.Y. 2023). Although one cannot aid and abet his or her own conduct (Id.), aiding and abetting liability is permissible when a corporate employer is considered the principal actor, even if it is through vicarious liability stemming from an individual's actions. McHenry, 510 F.Supp. 3d at 73 (internal quotations, emphasis, and citations omitted) (aiding and abetting liability can be established "even where [an individual defendant's] actions serve as the predicate for the employer's vicarious liability, so long as the employer's conduct has also been found to be discriminatory under the NYSHRL.").

27

As discussed below, the Court finds that NYSHRL discrimination has been adequately pleaded against the principal actor, Regeneron. Accordingly, Katiyar can be held liable under an aider and abettor theory if he "actually participated" in the conduct for which Regeneron is liable and "share[d] the intent or purpose of the principal actor." Id. at 68.

As noted in the Court's discussion regarding ADA discrimination, it is unlawful to terminate an employee out of fear that he or she will be inattentive to his or her job because he or she is responsible for the care of a disabled person. Graziadio, 817 F.3d at 432. The Court also noted above that the close temporal proximity between Plaintiff's accommodation request and her termination, as well as Plaintiff's plausible allegation of pretext, support the inference that this termination was motivated by associational discrimination. Plaintiff made her accommodation request directly to Katiyar, and he, along with Jones, terminated Plaintiff. (Am. Compl. § VI ¶¶ 71, 75.) Katiyar is therefore alleged to have been an active participant in the alleged discrimination by Regeneron.

Accordingly, the motion to dismiss Count Three against Defendant Katiyar is DENIED.

### b. Claims Against Regeneron

Regeneron, on the other hand, is an "employer" within the meaning of the NYSHRL. The elements of a disability discrimination

28

claim under the NYSHRL are generally in line with those under ADA, with the caveat that the NYSHRL "provides broader protection." Thomson v. Odyssey House, No. 14-CV-3857-MKB, 2015 WL 5561209, at *18 (E.D.N.Y. Sept. 21, 2015) (internal quotations and citations omitted).  As discussed above, Plaintiff has adequately pleaded disability discrimination against Regeneron under the ADA. Plaintiff therefore plausibly alleges discrimination under the NYSHRL's more lenient standard.

Accordingly, the motion to dismiss Count Three against Defendant Regeneron is DENIED.

### 2.   NYSHRL Retaliation (Count Four)

The NYSHRL, unlike the ADA, does not recognize requests for reasonable accommodation as protected activity.  Medina v. AAM 15 Mgmt. LLC, 750 F. Supp. 3d 332, 346 (S.D.N.Y. 2024) (cleaned up). Plaintiff's email to Katiyar in which she requested a flexible schedule therefore does not provide a basis for Plaintiff's retaliation claim.[9]

Plaintiff offers an alternative theory of retaliation based on her conversations with Jones about Katiyar's behavior.  However, the pleading requirements for retaliation claims "are identical

---

[9] The NYSHRL was amended, effective December 5, 2025, to recognize requests for reasonable accommodations as protected activity for the purposes of retaliation claims.  See 2025 Sess. Law News of N.Y. Ch. 600 (S. 3398) (amending N.Y. Exec. Law. § 296(7)).  However, the amendment specified that it was to be applied only to those actions "filed on or after the effective date." Id.  Accordingly, Plaintiff's claim must be evaluated under pre-amendment interpretation of the NYSHRL, which did not recognize accommodation requests as protected activity.

29

under Title VII and the NYSHRL." Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C., 716 F.3d 10, 14 (2d Cir. 2013). As explained in the Court's discussion of Title VII retaliation, these conversations fail to qualify as protected activity because Plaintiff did not adequately allege that she complained of discrimination based on her status as a woman or a mother. Nor did these reports express complaints of discrimination based on her own "disabilities" or her association with a disabled person. Because Plaintiff's generalized complaints did not constitute protected activity, she has likewise failed to meet the required elements of a retaliation claim under NYSHRL.

Accordingly, the motion to dismiss Count Four against Defendants Regeneron and Katiyar is GRANTED.

### D. NYCHRL Claims

#### 1. NYCHRL Discrimination (Count Five)

The NYCHRL, unlike the NYSHRL, does not "exempt employees from individual suits as employers." Doe v. Bloomberg, L.P., 36 N.Y.3d 450, 459 (2021). Accordingly, individual defendants are subject to personal liability for their own discriminatory actions. Id.

The elements of a disability discrimination claim under the NYCHRL generally comport with the ADA, although the NYCHRL pleading standard is more liberal. Thomson, 2015 WL 5561209, at *18 (E.D.N.Y. Sept. 21, 2015); Bueno v. Eurostars Hotel Co., S.L., No.

30

21-CV-535-JGK), 2022 WL 95026, at *8 (S.D.N.Y. Jan. 10, 2022) (explaining that the NYCHRL is to be construed "'liberally for the accomplishment of the uniquely broad and remedial purposes thereof.'") (citations omitted).  The Court has already found that Plaintiff adequately pleaded ADA disability discrimination. Plaintiff therefore necessarily satisfies the NYCHRL's more lenient standard.

Accordingly, the motion to dismiss Count Five against Defendants Regeneron and Katiyar is DENIED.

### 2.  NYCHRL Retaliation (Count Six)

The NYCHRL was amended in 2019 to state expressly that requests for reasonable accommodations constitute protected activity.  Piligian v. Icahn Sch. of Med. at Mount Sinai, 490 F. Supp. 3d 707, 715 (S.D.N.Y. 2020).  Moreover, the required elements of a prima facie retaliation claim are virtually identical under the ADA and the NYCHRL.[10]  The Court has already found that Plaintiff adequately alleges retaliation under the more stringent federal ADA standard.

Accordingly, the motion to dismiss Count Six against Defendants Regeneron and Katiyar is DENIED.

---

[10] Heiden v. New York City Health & Hosps. Corp., No. 20-CV-10288-LJL, 2023 WL 171888 at *16 (S.D.N.Y. Jan. 11, 2023).  The NYCHRL prima facie elements differ from the ADA only to the extent that the NYCHRL does not require proof of an adverse employment action.  Id.  This distinction is not relevant here.

**E. Earned Safe and Sick Time Act Claim (Count Eleven)**

New York City's Earned Safe and Sick Time Act ("ESSTA") provides that employees are entitled to "use sick time for absence from work [to] care of a family member who needs . . . treatment of a mental or physical illness." N.Y.C Admin Code § 20-914(a)(1). ESSTA also contains a retaliation provision that makes it unlawful for any person to "take any adverse action against an employee that penalizes an employee for . . . exercising or attempting to exercise rights under [the statute]." N.Y.C Admin Code § 20-918(b). Previously, ESSTA violations could only be pursued by the Department of Consumer and Worker Protection. N.Y.C Admin Code § 20-924(d). Effective March 20, 2024, however, ESSTA was amended to provide a private cause of action. The relevant amendment clarifies that "[s]uch civil action shall be commenced within 2 years of the date the person knew or should have known of the alleged violation." N.Y.C Admin Code § 20-924(f).

Given that the events leading up to and including Plaintiff's termination took place prior to the amendment's effective date, Defendant argues that Plaintiff is barred from bringing a cause of action under ESSTA. The Court agrees.

The New York Court of Appeals, like our Supreme Court, recognizes that "[a] statute has retroactive effect if 'it would . . . increase a party's liability for past conduct.'" Regina Metro. Co., LLC v. New York State Div. of Hous. & Cmty.

32

Renewal, 35 N.Y.3d 332, 365 (2020) (quoting Landgraf v. USI Film Prods., 511 U.S. 244 at 278-280).  And New York, like the Supreme Court, applies a presumption against retroactivity based on the right of individuals to "have an opportunity to know what the law is and to conform their conduct accordingly."  Id. at 370 (quoting Landgraf, 511 U.S. at 265).  Accordingly, New York courts will not apply a liability-imposing statute retroactively unless there is a clear manifestation of legislative intent to do so.  Id. at 370-71.

ESSTA's creation of a private right of action that did not exist at the time Regeneron acted necessarily increases the Company's liability for past conduct and is therefore subject to the presumption against retroactivity under New York law.  See S.S. v. Rockefeller Univ. Hosp., 239 A.D.3d 424, 426 (2025).  As such, Plaintiff's claim hinges on whether the New York City Council provided clear instruction that the ESSTA amendment was intended to have retroactive effect.

The ESSTA amendment contains no such instruction.  On the contrary, while a different amendment to § 20-924 specifies retroactive effect, the specific amendment creating a private right of action does not.  See N.Y.C. Local Law No. 172 for 2021 (amending N.Y.C. Admin. Code § 20-924).  If anything, this reinforces that the New York City Council intended that ESSTA would not apply retroactively.

Plaintiff's remaining argument—that the amendment should nonetheless be applied retroactively because of its "remedial" purpose—fails because the creation of a new cause of action is not a remedial measure.  Compare Rockefeller, 239 A.D. at 426, with Spiegel v. 226 Realty LLC, 231 A.D.3d 562, 563-64 (2024) (holding that a law had retroactive application "because the amendment at issue was remedial in nature . . . intended to a correct a discrepancy . . . not create a new cause of action.").

Accordingly, the motion to dismiss Count Eleven against Defendant Regeneron is GRANTED.

34

IV.   **Conclusion**

For the foregoing reasons, Defendants' motion to dismiss is GRANTED in part and DENIED in part.  For the sake of clarity, the Court will summarize the status of each count as to each Defendant:

- Count Four is dismissed as to all Defendants;

- Count Nine is dismissed as to all Defendants;

- Count Ten is dismissed as to all Defendants;

- Count Eleven is dismissed as to all Defendants.

The claims that survive as to each Defendant are as follows:

- Count One: interference in violation of FMLA (all Defendants);

- Count Two: interference in violation of FMLA (all Defendants);

- Count Three: discrimination in violation of NYSHRL (all Defendants);

- Count Five: discrimination in violation of NYCHRL (all Defendants);

- Count Six: retaliation in violation of NYCHRL (all Defendants);

- Count Seven: ADA disability discrimination (Defendant Regeneron);

- Count Eight: ADA retaliation (Defendant Regeneron);

35

The Clerk of the Court shall close Dkt. No. 18.

Counsel shall appear for a status conference on April 2, 2026

at 10:30 AM.

**SO ORDERED.**

Dated:    March 25, 2026
          New York, New York

_____
LORETTA A. PRESKA
Senior United States District Judge

36