Morgan Lewis

**Klair Fitzpatrick**
Partner
+1.215.963.4935
klair.fitzpatrick@morganlewis.com

October 14, 2026

Hon. Loretta A. Preska
U.S. District Court for the Southern District of New York
Daniel Patrick Courthouse
500 Pearl Street, Courtroom 12A
New York, NY 10007-1312

**Re: Joanne Kim v. Regeneron Pharmaceuticals, Inc., et al., No. 1:24-cv-05234-LAP, Defendants' Request for Pre-Motion Conference**

Dear Judge Preska:

We represent Defendants Regeneron Pharmaceuticals, Inc. and Ashutosh Katiyar in the above-captioned matter. We write to request a pre-motion conference concerning subpoenas Plaintiff intends to serve on two non-parties—Katharine McMullen, a contractor employed by IQVIA who performed various duties in the same department as Plaintiff both during and after Plaintiff's Regeneron employment, and IQVIA, Inc., a company that contracted with Regeneron in many different areas, including, in small part, supplying Ms. McMullen. *See* Exs. A, B. The IQVIA subpoena seeks "[a]ll documents, communications and/or ESI concerning the Statement of Work for Eylea Market Competitive Intelligence Support, including the services contemplated or performed thereunder and the negotiation, preparation, execution, modification, or performance of such Statement of Work." *See* Ex. A. The McMullen subpoena seeks "[a]ll documents, communications, and/or ESI concerning [Ms. McMullen's] work for Regeneron." *See* Ex. B. Both subpoenas are improper for multiple reasons and Plaintiff should therefore not be permitted to serve them.

First, the subpoenas are overbroad and seek confidential information unrelated to the case. They purport to seek all documents and communications

concerning Ms. McMullen's work for Regeneron or the scope of IQVIA's work for Regeneron related to its Eylea brand, without any temporal or other reasonable limitation, while the McMullen subpoena seeks virtually anything related to Ms. McMullen's work for Regeneron in any capacity and at any time. Compliance with either subpoena would result in disclosure of Regeneron's confidential and proprietary business information or other commercially sensitive documents. For example, IQVIA and Ms. McMullen provided services for Regeneron over various years related to competitor tracking, competitive intelligence, market entry strategies, product pipeline assessments, and interpretation of large amounts of market and product data. Thus, IQVIA and Ms. McMullen were necessarily exposed to Regeneron's confidential business information related to this work. Further, documents within the scope of the IQVIA subpoena would include contracts and communications between IQVIA and Regeneron across a large department with no temporal limitation whatsoever, sweeping in a wide range of materials unrelated to Plaintiff but likely to reveal commercially sensitive information related to Regeneron's operations and strategies. Regeneron has a direct interest in preventing the disclosure of such information. *See, e.g.*, *Solow v. Conseco*, Inc., 2008 WL 190340, at *4-5 (S.D.N.Y. Jan. 18, 2008) (granting motion to quash non-party subpoena seeking party's proprietary and competitive information); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2006 WL 2642192, at *2 (S.D.N.Y. Sept. 13, 2006) (granting motion to quash non-party subpoena seeking party's private financial information). During the parties' October 7 meet and confer, Defendants made clear to Plaintiff's counsel that neither IQVIA nor Ms. McMullen can produce any Regeneron confidential information in response to such subpoenas, and proposed that Plaintiff narrow the subpoenas accordingly.[1] Plaintiff refused. The Court should not permit Plaintiff to obtain Regeneron's proprietary and confidential information under the guise of a non-party subpoena, particularly where the information sought has no relevance to the dispute at hand and where any documents that do have marginal relevance have already been produced by Defendants, as discussed below.

---

[1] Further, the parties have already negotiated the parameters of their ESI review including relevant custodians, and Defendants have completed their review and production of all responsive ESI.

Second, the subpoenas are overbroad and unduly burdensome in that they would require extensive searches and result in the production of plainly irrelevant materials. As written, the requests are not limited in time or based on relevance to any claim or defense at issue here. Instead, the McMullen subpoena seeks all documents and communications related in any way to her contract work for Regeneron, whether or not that work had anything at all to do with Plaintiff or her claims. And the IQVIA subpoena similarly seeks virtually any document related to the scope of possible services to be provided across the Competitive Intelligence department for Regeneron's Eylea brand, regardless of when or even if such services were performed and untethered to Plaintiff's specific responsibilities or her claims. As set forth above, Ms. McMullen was staffed by IQVIA to perform work at Regeneron prior to and following Plaintiff's leave of absence, and wholly unconnected to Plaintiff's leave of absence or termination. Indeed, Plaintiff assigned certain work to Ms. McMullen when she was staffed to support Plaintiff's team, and so Plaintiff is fully aware that Ms. McMullen's engagement by Regeneron was not limited to only the Plaintiff's 2023 leave or following Plaintiff's termination. Defendants' counsel made that clear to Plaintiff during the October 7, 2026 meet and confer, and suggested that Plaintiff limit the subpoena to seek documents focused on Regeneron's engagement of IQVIA and Ms. McMullen specific to Plaintiff's leave of absence or following her termination. Plaintiff refuses to narrow to those issues and continues to seek documents relating to the engagement of IQVIA and Ms. McMullen unlimited in time or purpose. By seeking such a broad range of materials with no relevance to this matter, the subpoenas are impermissibly overbroad and unduly burdensome.[2]

Finally, the subpoenas are entirely unnecessary because they seek documents already produced by Defendants. Indeed, the IQVIA subpoena seeks documents "concerning the Statement of Work for Eylea Market Competitive Intelligence Support," but, in response to Plaintiff's document requests, Defendants already produced the relevant Statements of Work, which describe

---

[2] Plaintiff's counsel indicated during the parties' most recent meet and confer that he understood Defendants' position as to why these subpoenas were overbroad and would consider narrowing the subpoenas to address those concerns. However, Plaintiff has since refused to narrow the scope of the subpoenas.

the scope of services performed and identify Ms. McMullen as a lead contractor providing these services during the time that Plaintiff was on leave in June-July 2023 and following the elimination of Plaintiff's position in 2024, and the dollar amount associated with such engagement. And it is not clear what relevant Regeneron information Ms. McMullen has that would not be in Regeneron's possession and already produced in discovery.

The subpoenas seek a wide range of largely irrelevant documents with no reasonable limitation to their scope. Any relevant documents can be obtained through less intrusive means—indeed, relevant documents have already been produced by Defendants in response to Plaintiff's document requests. Furthermore, compliance with the subpoenas would result in the disclosure of highly commercially sensitive and proprietary information that belongs to Regeneron and has no bearing on the issues in this matter. The Court should therefore not permit Plaintiff to serve the subpoenas.

Defendants welcome a conference to discuss these issues more fully and are open to submitting a formal motion should the Court so desire.

The parties shall appear for a conference in Courtroom 12A on November 9, 2026 at 2:30 PM to address all outstanding discovery disputes. By November 3, 2026, the parties shall meet and confer, either in person or via videoconference, and make good-faith efforts to narrow the disputes where possible. By November 4, 2026, the parties shall submit a joint letter to the Court outlining each issue that remains disputed and the parties' respective positions.

The Clerk of Court shall close Dkts. 44, 45, and 50.

SO ORDERED.

Loretta A. Preska

Loretta A. Preska
Senior United States District Judge

October 22, 2026